MARGARET MARSH *et al.*

*v.*

EDWARD H. REED *et al.*

*Opinion filed February 19, 1900.*

1. TRUSTS—*power of equity to enlarge powers of trustee under a will.* A court of equity may enlarge the powers of a trustee under a will by extending the time limited by the testator for making leases of the property, where exigencies have arisen which make an extension of time necessary to the carrying out of the testator's wish that the income should provide support for his wife and children.

2. PERPETUITIES—*time limited by rule against perpetuities may be increased by period of gestation.* A trust to continue during the lives of the donor's children then in being and until the youngest child of any such children should attain the age of twenty-one, is not within the rule against perpetuities by reason of the possibility of a posthumous child being born to the surviving child of the donor.

PHILLIPS and MAGRUDER, JJ., dissenting.

*Marsh* v. *Reed*, 64 Ill. App. 535, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

Francis C. Sherman departed this life in the year 1870, seized of the title to lots 7 and 8, in block 34, in the original town of Chicago, on which was situate a hotel known as the Sherman House. He left a will, the provisions whereof, so far as they relate to that property, are as follows:

"I do give, bequeath and devise my real estate in said city of Chicago, known as the Sherman House property, and described as lots seven (7) and eight (8), in block thirty-four (34), in the original town (now city) of Chicago, in said county, with the hereditaments and appurtenances, to Joshua L. Marsh, of said city, as trustee, and his successor forever, in trust, however, for the following uses and purposes and upon the following condi-

tions: Immediately upon my death to take possession of
said Sherman House property, and collect and receive all
rents, issues and profits thereof then due or thereafter to
become due, and upon the termination, in any manner,
of the lease of any portion thereof, or upon any portion
thereof becoming vacant, to rent the same to such per-
son or persons and upon such terms and conditions as he
may think best, provided that no lease or demise shall
be for a longer term or period than ten years. I do here-
by authorize said trustee to insure said property as he
may think best, and in case the same, or any portion
thereof, shall be injured or destroyed by fire or other-
wise, to repair or rebuild the same, and for that purpose
to borrow money, if by him thought advisable or neces-
sary, upon such terms and conditions and for such time
or times, and in such amounts, as he may see fit, and to
execute and deliver any and all necessary notes, bonds,
mortgages, deeds of trust or other instruments in writing
to secure the payment of the same, upon said Sherman
House property, and to renew or extend the time of pay-
ment of any such loan, or again borrow money for the
payment of any such loan, or any I may have made on
the same, and secure the same as aforesaid.

"After the payment of all taxes, rates and assessments
legally levied, assessed or imposed upon said property,
and all premiums for insurance, and all interest as it ma-
tures, that may become due upon money borrowed for
the purchase, improvement, rebuilding or repairing of
said property, or that may have been borrowed by me
and secured on said property, and after paying all ex-
penses necessary for taking care of my cemetery lot at
Graceland cemetery and keeping the same in a suitable
and proper condition, (not exceeding $250 per annum,)
which I expressly direct him to have done, and all rea-
sonable charges and expenses attending the execution
of this trust, I direct said trustee to appropriate the re-
mainder of said rents, issues and profits as follows: Until

the indebtedness hereinbefore referred to, for the purchase, improvement, repairing or rebuilding said property, shall have been fully paid, I direct my said trustee to pay to my said wife the sum of $6000 per annum, and to each of my children living the sum of $3000 per annum, all payable quarter-yearly, and the remainder to the payment of said indebtedness. After said indebtedness shall have been fully paid, I direct said trustee to pay to my said wife, while living, one-third of such remainder and divide the remainder among my children, equally, and after her death to divide the whole of such remainder among my children equally. In case of the death of any of my said children, the heirs of his or her body, if any, shall in all cases represent him or her and be entitled to his or her share.

"It is my desire, and I do hereby direct, that my said trustee shall have, hold and manage said Sherman House property entire and undivided, and appropriate the rents, issues and profits thereof in the manner hereinbefore specified during the natural life of my said wife and children, and until the death of the last survivor of them, and until the youngest child of any and all of my said children shall become and be of the age of twenty-one years, and then to convey the same to the heirs of my said children, the heirs of one child representing and being entitled to one equal share."

The building then on the said lots was destroyed in the great fire of 1871, and the trustee, acting under the authority of the provisions of the trust, negotiated a loan in the sum of $400,000 on the premises for the purpose of procuring the necessary funds to erect another hotel building thereon. A new building was constructed and given the name of the Sherman House, and since its erection, until the filing of the bill herein, has been leased by the trustee, the terms of letting being restricted to the period of ten years, in obedience to the expressed wish of the donor of the trust.

On the 17th day of May, 1895, James H. Swan, who succeeded to the trusteeship of said trust, exhibited his bill in chancery in the superior court of Cook county, asking that he be authorized, by decree of that court, to lease said property for the term of ninety-nine years. The bill alleged that the testator left him surviving his widow, Electa Sherman, and two sons, Francis T. Sherman and George C. Sherman, and a daughter, Martha S. Marsh; that said widow and said George C. Sherman have since died, and that said George C. left neither widow, child, children nor descendants of children; that said Francis T. Sherman had reached the age of seventy years and has the following children and grandchildren, viz.: a daughter, Ella S. Marsh, who has a daughter, Margaret Marsh; a daughter, Lulu S. Aldrich, who has the following children: Eleanor, Martha and Louis; a son, F. C. Sherman, who has one child, F. C. Sherman, Jr.; and a son, E. G. Sherman, unmarried; that Martha S. Marsh is sixty-three years of age and has two children, Edwin S. Marsh and Ida E. Charles; that said Ida E. Charles has three children, Sherman A., Martha and Francis; that at the time of the making of said will and of the death of the said Francis Cornwall Sherman, the said lots hereinbefore described were improved with a substantial building situated thereon, used for the purposes of a hotel, known as the Sherman House, and that after the death of the said Francis Cornwall Sherman the said building was destroyed by fire in the month of October, 1871, and that under and in pursuance of the powers vested in the trustee under the said will the sum of $400,000 was borrowed for the purpose of rebuilding said hotel, which sum of $400,000 was secured by a trust deed or mortgage upon the said premises, bearing date on or about the first day of July, 1872, which money was borrowed for a term of ten years and matured on the first day of July, 1882; that the money so borrowed was insufficient to pay the cost of rebuilding the hotel upon the

said property, and other debts and obligations were incurred by the trustee, under the said will, in the erection of the building now situated upon said demised premises; which is used as a hotel, known as the Sherman House, and that after the erection of the said building the rents received therefrom were insufficient to pay the interest and other charges against the said property, so that the amount of the indebtedness against the said property increased until the year 1882, when it amounted to about the sum of $600,000; that the said Martha S. Marsh, the daughter of the said Francis Cornwall Sherman, mortgaged her individual property for the purpose of raising money for the purpose of paying the debts against said trust estate, and that her property was foreclosed and lost to her on said mortgages, and that a large amount of money was realized to the said trust estate from the property of said Martha S. Marsh, for which she has received no re-payment or compensation in any way or manner whatsoever; that for many years prior to the year 1885 no annuities or other payments were made out of said trust property by said trustee to the said Martha S. Marsh or Francis T. Sherman, the son and daughter of said Francis Cornwall Sherman, deceased, by reason of there being no net income derived from said trust estate over and above or in excess of the interest and other charges against the same; that there still remains due and unpaid, on account of the money borrowed in the year 1872, $265,000; that the net income derived from said trust estate has been diminishing continuously for a period of ten years or more; that such decrease has been more rapid during the last two years than prior to that time; that the part of the building upon said demised premises used for hotel purposes has been under a lease for a term of ten years, which expires on June 30, 1897; that the said building is not adapted to compete as a hotel with the modern buildings erected in the city of Chicago for that purpose; that owing to the great in-

crease in the hotel room in the city of Chicago, partly
growing out of the holding of the World's Columbian Ex-
position in the said city of Chicago in the year 1893, there
is a very uncertain and limited demand for hotels at the
present time or likely to be within the next few years;
that to secure a tenant for said hotel upon the expiration
of the present lease it would be necessary to remodel
the said hotel at a very great expense and cost, and that
even with such remodeling it would be very difficult, if
not impossible, to get any adequate rental therefor as a
hotel; that the entire building, as well the stores as that
portion thereof used as a hotel, is illy adapted to com-
pete with the more modern buildings in the city of Chi-
cago, which will result in a continued diminution in the
rents received therefrom and a great increase in the cost
of repairing and re-constructing and keeping the same
in shape to be rented to any advantage at all, under ex-
isting conditions, in the city of Chicago; that the said
premises above described, exclusive of the building situ-
ated thereon, are conveniently situated and well adapted
for improvement with a modern building, which could be
rented to great advantage and made to produce great
returns; that the said trustee has no money belonging to
the said trust which can be applied or used for remodel-
ing or re-constructing said building now situated upon
the said premises or in erecting a new building thereon,
and has no power, under the trusts in said will, to tear
down the said building and re-erect a suitable building
upon the said premises, and is by the terms of the said
will prohibited from leasing the same for a longer period
than ten years; that the said premises above described
belonging to said trust could be demised and leased for
a term of ninety-nine years at a greater net rental than
can be realized from the building now situated upon said
demised premises, and that it would be to the advantage
and benefit of all the parties interested in said trust es-
tate that the said premises should be rented for a long

term of years, up to ninety-nine or more, to some person or persons who will take such lease and secure the payment of the rental reserved therein by the erection of a modern fire-proof building upon said trust estate; that all of the children of the said Francis T. Sherman and Martha S. Marsh are above the age of twenty-one years. The said surviving children of the testator and their children were made parties defendant to the bill and filed answers thereto.

The cause was referred to a master, with directions to take and report the proof, together with his conclusions as to both law and fact. The master recommended the prayer of the bill should be granted, and incorporated in his report a finding of facts, in substance as follows: That the present monthly rental is $6058.30; that the tenant of the Sherman House, being the hotel proper, pays of that amount the sum of $4416.66, and that the annual rental which the tenant has to pay for the premises occupied by him is $53,000 per annum, and that his lease expires on June 30, 1897; that the building on the premises in question is entirely unsuitable, in the condition it is at present, for hotel purposes; that since the erection of said building many improvements have been made which are deemed essential, so far as the comfort and health of the guests who patronize the hotel is concerned, to the running of a hotel; that the trustee was compelled to lay out $20,000 in 1894 for repairs, to comply with the requirements of the health department of the city of Chicago in relation to sanitary plumbing; that there is no steam-heating in the building in the rooms occupied by guests; that the rooms are entirely too large to make hotel-keeping profitable; that the house is not fire-proof, and that there is no money in the hands of the trustee with which to make such repairs as are absolutely necessary; that he is of opinion and finds, after the expiration of the lease to the tenant of the hotel proper, on June 30, 1897, it will be scarcely possible to get more

than $20,000 a year rent; that from the testimony he finds that the localities of the first-class hotels have changed to south of Monroe street, and that the locality of the premises in question is at the present time unsuited for hotel purposes; that the floors of the stores, as they now exist in the building, are several feet above the sidewalk, and are therefore entirely unfit to be rented for stores, which require show windows for the exhibition of goods to attract customers, and that the rent which has heretofore been received from the stores will be very much less; that several of the stores are now vacant, and that the trustee receives from two stores at the present time $4000 a year, said lease expiring April 30, 1896; that he has rented one of said two stores from May 1, 1896, for the sum of $1000 for one year and has hopes of renting the other for $1200, but is not sure whether the same can be accomplished, indicating that the stores in their present condition will scarcely rent for more than one-half heretofore obtained; that he is of opinion and finds, that the rents which will be received from the premises in question after June 30, 1897, will not be sufficient to pay the taxes, insurance and repairs and interest on the indebtedness now resting upon the property, leaving entirely out of the question the annuities of $3000 each to be paid to the children of said testator, to-wit, Francis T. Sherman and Martha S. Marsh, under the will, and the reduction of the indebtedness on said premises; that it appears from the testimony that if the real estate was leased for a term of ninety-nine years, the lessee to pay all taxes, assessments and other charges on the land, it could be leased at a minimum of $65,000 a year; that all the adult defendants to this cause are willing and desirous that the prayer of the bill of complaint filed in this cause should be granted, and that the said trustee be authorized by this honorable court to lease the premises in question for the period of ninety-nine years, or such other term as the court may deem best for the interest

of all concerned, and that it will be to the interest of all the devisees of said Francis C. Sherman, deceased, that such authority be given to the trustee of said estate.

The court entered a decree authorizing the trustee to lease the property for the term of ninety-nine years. The guardian *ad litem* for the infant grandchildren of the said Francis T. Sherman and Martha S. Marsh prosecuted an appeal to the Appellate Court for the First District. The decree being affirmed by that court, this appeal was prosecuted by the same appellants to this court.

GILBERT E. PORTER, for appellants.

WILSON, MOORE & MCILVAINE, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The findings of the master and chancellor as to the facts we find fully supported by the evidence preserved in the record. It is not otherwise contended, but the position of counsel for the appellants is, (1) that a court of equity is without jurisdiction to authorize the trustee to execute a lease for a longer period than that fixed by the testator in the will; and (2) that if such jurisdiction is not wanting, the case presented does not justify the exercise of the power to so authorize the execution of a lease in opposition to the expressed will of the donor of the trust.

That courts of equity have jurisdiction to entertain and grant the prayer of bills of this character cannot be regarded as an open question in this court. (*Gavin* v. *Curtin*, 171 Ill. 640; *Johns* v. *Johns*, 172 id. 472.) In *Gavin* v. *Curtin, supra,* the jurisdiction of chancery in such cases was asserted, and the case in its facts found to warrant the exercise of the equitable power of the court. In *Johns* v. *Johns, supra,* the jurisdiction of a court of chancery to thus deal with trusts was recognized, but it was there held the case presented did not warrant the exercise of the power possessed by the court. In each of these cases

the bill prayed the trustee should be authorized to sell and convey the title to real estate which was the subject matter of the respective trusts. In the *Johns case* it was said (p. 482): "The duty of the court in such instance is to regard the express wish of the donor and to lend its aid to the accomplishment of his desires, and the best interest of those entitled to the annual income of the subject matter of the trust is, it is believed, never considered a sufficient reason for breaking in upon such a trust and disposing of the subject matter thereof in violation of the intention and purpose of the donor. In the late case of *Gavin* v. *Curtin, supra,* speaking with relation to the circumstances which ought to authorize courts to defeat the will of a donor in such instance, we said: 'The exercise of that power can only be justified by some exigency which makes the action of the court, in a sense, indispensable to the preservation of the interests of the parties in the subject matter of the trust, or, possibly, in case of some other necessity of the most urgent character.'"

It is not necessary in the case at bar we should consider whether the allegations and proofs in this case are sufficient to bring the case within the rule there announced, for the reason the bill in the case at bar does not ask, nor does the decree purport to authorize, the trustee to sell and dispose of the subject matter of the trust. The donor designed the trust to subserve two purposes: (1) To secure the appropriation of the income of the property to certain purposes during the existence of the life of his wife and his children; and (2) to preserve the title to the property,—that is, the property itself,—and vest the possession of and title to the property in his grandchildren or their children upon the death of the wife and children of the donor. The bill did not ask for interference with, nor does the decree in any manner interfere with, the design of the donor as to the devolution of the title to the trust property. The decree leaves the title to the property in the trustee, who remains charged

with the duty to convey it in exact obedience to the wishes of the creator of the trust. The donor clothed the trustee with authority to rent the property and to collect the rents therefrom during the continuation of the trust, and in so doing placed a limitation upon the duration of any lease of the property to be made by the trustee. The effect of the decree is to enlarge the powers of the trustee in this respect, leaving the subject matter of the trust in all other respects unimpaired. In other words, the decree does not defeat the trust, but was entered upon the theory its provisions were necessary to carry into execution the design of the donor. The requirement that the leasing should be for periods not longer than ten years was no doubt dictated by the belief of the donor that the rental value of the property would increase, and that short terms of letting the property for rent would best conserve one of the ends he designed to secure, namely, to provide an income for his wife and his children. The business judgment of the donor was no doubt correct at the time, but in this instance, as is so frequently true in other cases, it is demonstrated it is not within the power and judgment of man to infallibly anticipate future events and direct that which shall be the wiser course to be pursued in after years. The question being one which relates merely to the better or more judicious mode of managing and controlling the subject matter of the trust in order the design and wishes of the donor may be more completely accomplished, the stringent rule which properly obtains when the application is to divest the trustee of the title to the property which is the subject matter of the trust and vest such title in direct opposition to the will of the donor ought not be given full application.

The equitable principle applicable when the directions of a donor as to the manner of executing the trust are found to be defective and unwise is well stated in *Curtiss* v. *Brown*, 29 Ill. 201, as follows (p. 230): "Exigen-

cies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of a court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust, and do with the fund what he would have dictated had he anticipated the emergency."

Courts of chancery should exercise the jurisdiction and power vested in such tribunals to change the directions of the donor as to the course to be pursued in the mere matter of managing the trust property, when it is clearly made to appear that conditions are so changed and different as to imperatively require the substitution of some other course of management in order the purpose of the creator of the trust may be conserved and accomplished. The evidence in this case clearly demonstrates that without relief against the provision that the property shall not be leased for a longer period than ten years the trust property will be substantially unproductive and the purpose of the donor to provide an income for his children out of the income of said trust estate wholly defeated. Relief of that character is in aid of the design of the donor,—not subversive thereof,—and may be properly granted. The trust is not violative of the rule against perpetuities, nor does the execution of a lease for ninety-nine years create a perpetuity. The title to the trust property is vested in the trustee during the lives of the children of the donor and until the youngest child of such children should attain the age of twenty-one years. The vesting of the title by conveyance from the trustee is to occur at the expiration of a number of lives of persons then in being or within twenty-one years thereafter. In case of the birth of a posthumous child of one of the children of the testator the vesting may not occur within twenty-one years after the expiration of the lives in being when the limitation was created, but that

period may be increased by the period of gestation. (*Waldo v. Cummings,* 45 Ill. 421; 18 Am. & Eng. Ency. of Law, 340, 341.) A lease for a longer period than that designated by the donor may operate to prevent the remainder-men from entering into actual personal possession and control of the premises at the time the right to such possession would have accrued under a lease for the period of ten years, but will not prevent the investiture of title in the parties to take at the time such parties will become entitled to be invested with such title by the provisions of the trust instrument.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

PHILLIPS and MAGRUDER, JJ., dissenting.