Marie Elaine Denegre, et al., v. William B. Walker, et al.

Gen. No. 11,323.

1. JUDICIAL NOTICE—*what taken of.* The Appellate Court will not
close its eyes to the common knowledge of all men who have in late
years watched the character of the improvements made in the business
center of Chicago and to the fact that many of such buildings are erected
under long term leases.

2. TRUSTEES—*power to make 99-year lease.* Where a will gives to
trustees power to lease the premises of the testator upon condition that
any lease made be reasonable, held, in view of the particular facts
shown with respect to the desirability of making a 99-year lease and the
consents of the adults interested in the premises in question, that such
trustees have the power to execute such a lease, and this notwithstand-
ing persons not *in esse* may, upon the happening of certain contingen-
cies, become interested in such premises.

Denegre v. Walker.

3. EQUITY—*jurisdiction of, to enlarge terms of trust created by will.* Equity, in this state, has jurisdiction upon a proper showing to enlarge the powers conferred upon trustees appointed by will, but such enlargement will not be made except from necessity and then no further than the circumstances of the particular case urgently require.

Proceeding to construe will. Error to the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the October term, 1903. Reversed and remanded with directions. Opinion filed May 26, 1904.

DAVID QUIGG and J. A. RICHARDSON, for plaintiffs in error.

BENTLEY & BURLING, for defendants in error.

MR. JUSTICE BALL delivered the opinion of the court.

William B. Walker and Clarence Buckingham as executors and trustees of the last will and testament of Silas B. Cobb, deceased, filed a bill in the Superior Court of Cook County, in which, among other things, they allege that Silas B. Cobb died April 5, 1900, leaving a last will and testament, which is made a part of the bill; and that said will was duly probated in said county May 16, 1900; that the inheritance tax appraiser fixed the value of the real estate of such decedent at $870,397.50, and of the personal property at $5,829,819.96; and that all debts and legacies have been paid; that the only heirs at law of said Cobb at the time of his death are all of lawful age, and they are made parties defendant; that by said will the entire estate of said deceased was given to complainants upon the trusts declared therein; that the time of distribution of the real estate by said will is fixed at the time the youngest grandchild named therein shall reach the age of twenty-five years, which will be October 6, 1905; that complainants are then to divide said real estate into three equal parts; one part to be conveyed to his daughter, Louise C. Walker, or her heirs; another to his grandchildren, S. C. Coleman, Louise C. Hunt, and J. G. Coleman; and the remaining part to be held by them for the sole use and benefit of his daughter, Bertha C. Denegre, during her natural life; that

upon the death of said Bertha her share shall go in equal parts to her children and their descendants; but if she die without issue, then one-half of her estate shall go to said Louise C. Walker or her heirs, and the other half to the three grandchildren named; that said Bertha has one child now living, Marie Elaine Denegre, aged seven years, who is made a defendant to said bill; that Louise Coleman since the execution of said will has intermarried with Jarvis Hunt and now has two minor children named Jarvis Hunt, Jr., and Louise Hunt, both of whom are made defendants to said bill.

That eleven parcels of real estate came to complainants as such trustees, one of which is situate upon the west side of Dearborn street about midway between Madison street and Washington street, in the city of Chicago, being ninety feet front by eighty feet in depth, and worth $500,000; that prior to the time of distribution the trustees may sell unimproved real estate, but no express power is given them to sell improved real estate before that time arrives; and that when such time comes, if the parties entitled thereto do not agree upon a division, the trustees may sell such real estate and divide the proceeds as above set forth; that there is on said real estate above described a four-story stone building, old, in bad repair, and without modern conveniences; that its rentals are diminishing and tenants hard to get; that such building is unsuitable to its situation, and should be replaced by a modern structure; that the deceased left to the trustees the sum of $500,000 with which to improve such of the real estate as they saw fit; that a suitable building upon said premises would cost at least $600,000; that the value of the other real estate does not exceed $400,000, and hence it is unwise for the trustees to improve the Dearborn street lot, as they would then be compelled to sell the same in order to make distribution; that the wise business policy is to lease this lot for ninety-nine years, or longer, thereby securing a permanent income of from $25,000 to $30,000 per year as against the present rentals, which do not net more than $18,000 and are diminishing;

that the trustees have at different times received offers for the making of such a lease, but they have doubts whether under the terms of the will they are authorized to execute the same, and that as there are minors who hereafter may be interested in the distribution of this estate, the trustees desire to have the question of their authority in this regard determined by the court; that the trustees believe under the first clause of the will, which reads, * * * " I direct my said trustees to care for, rent and manage my real property, to pay all taxes, assessments and insurance thereon, and to make all necessary repairs in their discretion," * * * they have the power to make such a lease, but they are advised by counsel that the extent of their powers in this regard is doubtful, and they therefore file this bill; that even if the trustees have not such power under the will, the court should authorize them so to do, in order that the intention of the testator be carried out; that the time of such distribution may be delayed by reason of two suits, to which the trustees have been made defendants, in which damages are claimed to the amount of $3,500,000 on account of the alleged negligence of the deceased as a director of the National Bank of Illinois, which suits are yet pending and undetermined.    The prayer of the bill conforms to its allegations.

The several minor defendants answer, asking the court to protect their interests.    The adult defendants answer, admitting the allegations of the bill to be true, and stating their belief that it will be for the best interests of the estate to make a ninety-nine year lease of said real estate.

The cause was referred to a master, who, upon testimony taken before him, recommended that a decree be entered authorizing and directing the trustees to make a lease of the said real estate for ninety-nine or more years, upon receiving proper terms as to rental and security.    Upon the hearing of the master's report the learned chancellor entered a decree finding, among other things, that under the direction contained in the will the trustees have power to make a lease " for the period of ninety-nine years or more,"

of said real estate, where the making of such a lease is in accordance with wise business policy in the management of such estate, finds the facts as set forth in the bill; and decrees that the trustees have power and are authorized under the terms and provisions of the will of said Cobb and this decree to make " a lease of said real estate for ninety-nine or more years."

No offers to lease said premises are shown in the master's report, and none appear to have been put in evidence before the chancellor. Clarence Buckingham, one of the trustees, says: " Many different propositions to take a lease have been made, and the trustees believe an annual rental of from $25,000 to $30,000 could be obtained with a modern building as security for the rent." L. W. Epps, a real estate dealer, familiar with the values and best uses of property in the vicinity of Washington and Dearborn streets, says that the wise policy in handling this real estate is to improve it with a modern steel structure; that whether it would be good business policy to make a ninety-nine year lease or not, would depend entirely upon the terms of the lease; and that the wise policy would be to make a lease now, based upon four or four and one-half per cent of the market value of the property.

To obtain the judgment of this court as to the propriety of this decree this writ of error is prosecuted by the minor defendants.

The power of the trustees under this will to lease the premises described in the bill of complaint is undoubted. The only limitation on that power is that the lease must be reasonable. They ask that they may be allowed to execute a lease of the same for "ninety-nine or more years." If they are allowed to do this the fee of this real estate cannot be distributed until the end of the term, except as subject to the lease. It therefore devolves upon the trustees to show that under all the circumstances of the estate, and of this particular piece of property, such a lease is reasonable. The evidence establishes the fact that this property cannot be suitably improved except by placing thereon a modern steel

structure.   The other new buildings in that vicinity are of
that character; and we ought not to shut our eyes to the
common knowledge of all men who have in late years
watched the improvements made in the business center of
the city, that they are all of this character, and that many
of them are erected under long term leases.   The trustees
show clearly that they cannot erect such a building with
the funds at their disposal, and if they did the same objec-
tion raised here, that the property could not be distributed,
would then exist.   It further appears that the present
building has ceased to attract desirable tenants, and its net
income is decreasing from year to year.   It is also apparent
that if the trustees do nothing, the defendant to whom this
property falls by distribution will at once be met by the
same difficulties as now confront the trustees.   The situa-
tion of this property indicates its use.   It is necessarily
bu iness property and not residence property.   Its primal
character is that of income-producing property.   It is ap-
parent that it cannot be rented to one who will erect upon
it a suitable income-producing building under a five, or ten,
or even a twenty year lease.   In such a case, time is as
essential an element as is the annual rental.   We are, there-
fore, of the opinion that not only have the trustees the
power to make a long lease of these premises, but that to so
do is a reasonable exercise of this power.

In reaching this conclusion we are not uninfluenced by the
fact that every adult defendant (in which list is every per-
son having any vested or certain interest in this property)
has approved of and has consented to the making of such a
lease.   Baldrige v. Coffey, 184 Ill. 75.   Marie Elaine Dene-
gree will have no interest therein unless she survives her
mother.   The two Hunt children will have no interest
therein unless they are alive October 6, 1905, and their
mother then be dead.   But the contingent interest of the
minors in this property warrants them in asking the court
to pass upon the advisability of making such a lease.

The objection that persons not yet *in esse*, on the hap-
pening of certain contingencies, may become interested in

this estate, and therefore a long lease should not be authorized, is without merit. In cases like this it is sufficient to make all persons *in esse* at the time of the filing of the bill, who have an interest in the estate, parties defendant. The decree entered upon such a bill will be binding upon others not *in esse*, as their interests are identical with those in being. The opposite rule would sacrifice the rights of the living to those of posterity. Hale v. Hale, 146 Ill. 227. Further, that courts of equity have jurisdiction to entertain such bills as the one here presented, and to grant relief thereunder, is no longer an open question in this state. Hale v. Hale, 146 Ill. 227, 253; Marsh v. Reed, 184 Ill. 263, 271. The application here is not to convert real estate into personal property, a thing not to be done unless the power to so do is found in the will, except under necessity of the most urgent character (Gavin v. Curtin, 171 Ill. 640), but it is, to execute a lease, the effect of which will be to carry out the intention of the testator. One may be wise for the day, but he cannot be wise for all time. Changed conditions may call for enlarged powers upon the part of trustees, in order that the design of the donor be not frustrated. In such case the court may act in furtherance of that design, even though such act results in granting power to the trustees not found in the words of the will. "Exigencies often arise not contemplated by the party creating the trust, and which had they been anticipated would undoubtedly have been provided for, when the aid of a court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust, and do with the fund what he would have dictated had he anticipated the emergency." Curtiss v. Brown, 29 Ill. 230.

The facts here presented justified the learned chancellor in taking jurisdiction and in granting relief in this case; but we do not approve the decree in its entirety. It was the duty of that court, as well as it is the duty of this court, to preserve this property for the beneficiaries, and

not to enlarge the powers of the trustees except from necessity and upon good cause shown, and then no further than the circumstances urgently require. A decree giving the trustees power to lease this real estate " for ninety-nine or more years," is too indefinite. It allows the execution of a lease for a period of one thousand years, thus practically conveying the fee. No direct evidence is found in the record as to the minimum annual rental which would be produced by such a lease, nor is such minimum fixed by the decree. Nor does the evidence show, or the decree determine whether the rent is to be stationary for the whole term, or to be readjusted periodically. Wanting these particulars, we lack the necessary data to enable us to determine whether or not this decree carries out the intention of the donor and conserves this estate.

We are therefore compelled to reverse and do reverse this decree, and to remand the cause, with directions to the chancellor to take such further evidence, by *bona fide* bids or otherwise, in his discretion, to fix the time such lease shall run, and the minimum rent produced thereby, and the manner in which the amount of such rent is determined, whether for the entire term or by periodic revaluations; and then to enter such decree as shall be just and equitable.

*Reversed and remanded with directions.*