Low *et al. v.* FIRST NAT. BANK & TRUST CO. OF VICKSBURG.

(Division A. Jan. 11, 1932.)

[138 So. 586. No. 29622.]

54

Brunini & Hirsch, of Vicksburg, for appellants.

W. H. Clements, of Rolling Fork, for appellee.

56

**McGowen, J.,** delivered the opinion of the court.

D. D. Low, resident citizen of Sharkey county, Mississippi, died on the 19th day of January, 1930. On the 28th day of December, 1929, he executed his will and trust agreement in which the First National Bank & Trust Company of .Vicksburg, Mississippi, was named by him as executor and trustee of his estate. At the time of his death, he owned two valuable plantations containing three thousand two hundred acres of land, amply equipped with farming implements and live stock with which to cultivate open lands. The pleadings reflect that the lands are in a high state of cultivation with houses and all the set-up usual and incident to the operation of a Delta plantation.

Under authority of item 2 of the will, the executor operated the plantation for the balance of the year 1930, and continued the operation during the year 1931.

Items 2, 3, 4, 5, and 6 of the will read as follows:

"Item 2: If I should die at a period of the year too late to arrange for the renting of my real estate in Sharkey county, Mississippi, or at a period of the year when the crops on the land owned by me will be in process of cultivation, or will not have been harvested, then and in that event my executor and/or trustee is authorized and empowered to expend such a sum or sums as may be necessary to make and complete the making, harvesting and marketing of said crops but in no event shall my executor and/or trustee operate said properties or any part thereof beyond another crop.

"Item 3. My executor and/or trustee is hereby authorized and empowered to rent, demise and lease for a period or periods beginning on or after the end of the calendar year of my death, my real estate holdings in Sharkey county, Mississippi, for such a time and upon such terms and conditions and for such consideration as it may deem wise and to the best interest of my estate, and to continue to rent, demise and lease said real estate holdings for such periods and on such terms and conditions and for such consideration as it may deem wise and to the best interest of the estate so long as the said trustee may exercise control over the same.

"Item 4: I authorize and empower my said executor and/or trustee to sell and convey, with or without warranty, for cash or on such terms as it may deem to the best interest of my estate, and for such consideration as it may determine, all of the real estate of which I may die seized and possessed situated in Washington county, Mississippi.

"Item 5. I authorize and empower my executor and/or trustee to sell and to execute such bills of sale and other instruments necessary to convey and deliver all of the personal property which I may own at the time of my death, except such as is specifically bequeathed in this will. Said personal property need not be sold as a whole, but may be sold separately, and for such a price,

but not less than its market value, and on such terms as my executor and/or trustee may determine.

"Item 6: In the event my said executor and/or trustee is offered an opportunity of disposing of my lands in Sharkey county, Mississippi, for not less than one hundred ($100) dollars per acre it is hereby authorized and empowered to sell and convey said lands and to receive and receipt for the purchase price thereof. Said sale may be made with or without warranty, for cash or part cash and upon such terms for deferred payments as may be determined by said executor and/or trustee."

By item 9 of the will, the National City Savings Bank & Trust Company of Vicksburg, and its successor, was named by the decedent as trustee, and provided that the remainder of his property, real and personal, was to constitute a trust in favor of his six minor children; and it was directed that the trust estate should be set apart equally to the said children, the details of which are unnecessary to set forth here.

Item 10 of the will has this clause: "The trustee shall hold, manage, care for and protect the trust estate all in accordance with its best judgment."

It was alleged that the executor and trustee will continue to operate the plantation in the year 1932 in opposition to the terms of the will.

The answer of the executor and trustees sets up that it is impossible to sell the lands for as much as the minimum price of one hundred dollars per acre; that it is impossible to lease the lands, because no lessee can be found who is financially able to rent the lands; that the lands are in a good state of cultivation, with all the necessary farming equipment, including tenants in the houses upon the land; that in the event the land cannot be sold under the terms of the will for as much as is required (and no one can be found who is able and willing to lease the lands), in that event, the tenants will remove from the place, the lands will grow up in weeds

and bushes, and there will be a general depreciation of the value of the land; that the live stock and equipment for the operation of the place, if sold at that time, would entail great loss, as the property cannot be sold for its value because of financial depression—in substance and effect, that most probably there will be a partial destruction of the value of the land in that it will be changed from cultivated to uncultivated land, and that there will be a general depreciation in so far as the value and productiveness of the plantations are concerned. The executor and trustee offered to make a formal transfer of the property to the trustee subject to the use of it for the completion and harvesting of the crop of 1931; and the trustee and executor made their answer a cross-bill, and prayed that they be allowed to invade the trust expressed in the will so as to permit the properties to be operated by the trustee until conditions were such that the provisions of the will might be complied with.

To this cross-bill a demurrer was filed raising the question, generally, that the court, under the facts, was not authorized to invade the will and set aside the expressed intention of the testator by having the place operated by the estate through its trustee. The court overruled the demurrer to the cross-bill and granted the prayer thereof, directing that the executor transfer the property to the trustee so as not to interfere with the crop of 1931; directed that the trustee be authorized and empowered, if a purchaser under the terms of the will could not be found by the time it was necessary that preparations for the crop of 1932 be begun, and no renter prior to said time could be reasonably found that was able to rent and operate said property at a reasonable rental on its own account and without aid from said estate, then, in that event, the trustee was authorized to operate the property for the year 1932, and thereafter until such renter might be found, or that the property be sold under the terms of said will pending the further orders

of the court; and directed that the trustee be authorized and empowered to handle, manage, and use all property belonging to the estate necessary in the operation of said property.

It will be observed from section 2 of the will that both the trustee and the executor were prohibited from operating the properties, or any part thereof, for the year 1932; and that the property was to be leased by item 3, and the lease was to continue as long as the trustee exercised control over the same. Item 6 of the will authorized the sale of the land for not less than one hundred dollars per acre. It is admitted in the pleadings that the lands cannot be leased, nor can they be sold for the minimum price stipulated in the will.

The court below dismissed the original bill, and sustained the allegations of the cross-bill. The complainant and cross-defendants declined to answer further, and an appeal is prosecuted here by the minor children of the decedent.

Two questions are presented to us for decision: First, is the executor or trustee authorized under the will to operate the properties for 1932? Second, in the absence of such authority in the will, may the court set aside the terms of the will and authorize the executor or trustee to do that which the will expressly prohibits?

As to the first question presented, there is no doubt but that the intention of the testator was clear that he did not intend that his property should be operated beyond the year 1931—if, indeed, it could be operated under the strict terms of the will for that year. As to the second question, was the court authorized to decree that in the event the property could not be leased or sold under the terms of the will, the estate might continue to operate its Delta plantation until further orders of the court?

These facts present to us a very delicate question for decision, involving, as it does, the hazard attendant upon

every kind of business being conducted in this state at this time. The testator in this case executed his will at a time when, as we now know, a financial depression throughout the entire world had definitely set in. At that time the financiers, the leading statesmen, and the economic experts of this country had freely predicted and encouraged the reading public to take an optimistic and roseate view of that which to them appeared to be only a temporary halt in the prosperity of this country. We now know that this depression has continued; and at the time of the writing of this opinion, financial interests, great and small, are unable to sense with certainty the extent of that which is now considered a calamity.

This estate, according to the showing, has personal property with which to operate these plantations worth, at a fair price, a small fortune. The answer and cross-bill alleges that it has sufficient funds with which to operate the places. Under this situation, may it be said that the deterioration in value of the plantations, the loss of tenants on the same, the general dissipation of the organization and set-up with which to operate the plantations will cause substantial, partial destruction of this real and personal estate? There is certainly great loss, and a partial destruction thereof. This is intensified by the fact that these alluvial lands, without cultivation, will rapidly grow up in weeds and bushes and become in a short time wild lands, entailing great expense to restore them to their former cultivated state. For such a plantation to remain uncultivated for one year or longer greatly depreciates it from the standpoint of its value to the estate, and may be said to be a destruction in part of it if the trustee shall be unable in any manner to have the estate cultivated by a lessor, or to sell the estate under the terms of the will.

In this state of case, we must bear in mind certain well-fixed rules by which we are bound. This will is

lawful in so far as we have referred to it. The purpose of the testator was lawful, and his intention in this behalf was plain and unmistakable. The testator has a right to make his will as he pleases so that it does not violate the law; and the courts have no right or power to amend, modify, correct, or reform his will lawfully executed and in conformity with the rules of law controlling testators in disposing of their property. See Schlottman v. Hoffman, 73 Miss. 189, 18 So. 893, 55 Am. St. Rep. 527. It is ofttime said that the "intention of the testator is the polar star for inquiry in the interpretation of his will and such intention must be collected from the words which he has employed; the question is not what he wished but what he had said." It may be that the decedent did not desire any character of speculative operation of his plantations, and for that reason did not desire his estate to take the risk and was unwilling to jeopardize his estate by permitting the operation of the properties beyond one year after the year in which he died.

Under sections 1621 and 1630, Code 1930, an executor is directed to, and swears that he will, carry out the directions of the testator subject to the restrictions of the law only. In this situation, we are presented with a state of facts in which the estate of this decedent faces a hazard, and risk of permanent, substantial loss. To follow the terms of the will will result in permanent impairment and partial destruction of the estate. The operation of it even for one year may entail loss of money expended therefor. But we are persuaded that the welfare of all the people of this state is better subserved by each person in his place undertaking to carry on the business and enterprise to which we have heretofore set our hands lawfully. The other course will produce stagnation and starvation, and create a wilderness of that which is now a garden. The estate can afford to pay

something to conserve and preserve the lands held in trust.

We think the law applicable to this case is settled by this court in the case of Mayes v. Mayes, 133 Miss. 213, 97 So. 548, 550, in which case Chief Justice SMITH laid down this rule: "A court of equity will not order the sale of trust property and the reinvestment of its proceeds merely for the purpose of increasing the value of the trust estate, but will order such a sale and reinvestment when so to do is necessary in order to effectuate the purpose for which the trust was created or to prevent the loss or destruction of the trust estate." The power is vested in the chancery court to invade the terms of the will, to set aside the express intention of the testator in order that his ultimate purpose may be carried out, and prevent the loss or destruction of an estate. The courts of other states have announced the same rule.

In Pennington v. Metropolitan Museum of Art, 65 N. J. Eq., page 11, 55 A. 468, 472, that court used this language: "If trustees disclose a situation of their trust in which a slavish adherence to the terms of the trust will operate to wholly prevent the benefits intended by its creator, and they seek instructions and directions as to their duty, I think that instruction and directions for a course of conduct which, though differing from that prescribed by the terms of the trust, will actually carry out the intent of the creator, may well be grounded upon and sustained by the necessity of the case. The benefits intended for the beneficiaries are the main subjects of consideration. The modes in which those benefits may be attained are incidental, and necessity may require a change of mode to produce the intended effect. The power of the court may well be exercised in a case of evident necessity." See also Ruggles v. Tyson, 104 Wis. 500, 79 N. W. 766, 81 N. W. 367, 48 L. R. A. 812; Gavin v. Curtin, 171 Ill. 640, 49 N. E. 523, 40 L. R. A. 776; Marsh v. Reed, 184 Ill. 263, 56 N. E.

306; and Johns v. Montgomery, 265 Ill. 21, 106 N. E. 497, L. R. A. 1916B, 1073, Ann. Cas. 1916A, 996; Section 133, 26 R. C. L., p. 1283.

We are of opinion, however, that the decree in this case should be limited to the operation of the plantations by the estate for the year 1932, and the chancery court will, at the end of that year, be better able to determine whether or not the will should be further invaded or a strict adherence to its terms would be required. The decree in this case will limit the power of the trustee to operate the plantation for the year 1932, with the discretion granted to the chancery court to further consider the operation of the plantations by the estate for a longer time, as conditions may appear at the close of the present year.

Affirmed as modified.