[L. A. No. 16844. In Bank.—April 12, 1940.]

EVART W. ADAMS, et al., Respondents, v. EDNA T. COOK, et al., Defendants; F. P. NEWPORT, et al., Appellants.

Lawrence M. Cahill for Appellants.

James E. Mahon, Fleming & Robbins and C. S. Tinsman for Respondents.

CURTIS, J.—The real property which is the subject of this action was on September 4, 1913, conveyed in trust to Title Insurance and Trust Company, as trustee, and on the 17th day of September, 1913, a declaration of trust was executed whereby the Title Insurance and Trust Company agreed to hold said real property for the purpose of selling the same at any time prior to June 1, 1916, at a gross price of not less than one dollar and fifty cents ($1.50) per square foot, and provided further that if it was unable to sell said real property prior to that date for this price, it could sell the same for such lesser sum as it might deem to be for the best interest of the beneficiaries. The trustee was given power to lease or rent said real property for such price and on such terms and conditions as it might deem best *"subject to the sale of said property under the conditions of this trust"*. The proceeds of sale or lease of the property were to be applied to pay trustee's costs, fees, expenses, real estate commissions and taxes, and the balance to be divided into 250 shares and paid to "the owners of certificates of beneficial interest issued and to be issued by said trustee representing the ownership of the balance of such proceeds of sale". The trust further provided that the trustee in all other matters connected with the trust should act upon the written order of the owners of at least two-thirds of the beneficial interest, said order to be binding on all beneficiaries. The trust was not to terminate until all the costs, fees and expenses of the trustee are paid. At the time the trust was created, it was the intention of those creating the trust to sell the property, but no purchaser could be found who

would pay the price fixed in the trust instrument. It was not known at that time that the property was oil property and in fact oil was not found in that vicinity until a comparatively short time before the commencement of this action. Upon the discovery of oil in territory included in the land covered by the trust, the trustee was approached by several reliable oil companies for an oil lease of the premises, but the trustee refused to give a lease, as its officers questioned its power under the terms of the declaration of trust to execute a lease under the terms demanded by said prospective lessees. It seems that those desiring an oil and gas lease of said trust property refused to enter into any such lease, if the lease were made subject to the sale of the property under the conditions of the trust. In the meantime many wells were drilled upon adjacent and contiguous properties and oil was being produced from said wells, which it was contended were draining oil from beneath the land covered by the trust property. Upon the refusal of the trustee to enter into any oil or gas lease of the property under the conditions demanded by the oil companies, this action was brought by plaintiffs, who represent more than 90 per cent of the beneficial interests under said trust, against the trustee and the remaining beneficial interest for declaratory relief, and also for equitable relief.

The complaint is in two counts. Count one is for declaratory relief and count two is for equitable relief, based upon allegations that oil and gas wells are being drilled on property adjacent and contiguous to the trust property and unless the trustee is permitted to enter into an oil and gas lease of said trust property, the oil companies leasing contiguous property will drain and remove oil and gas from beneath the trust property to the irreparable damage of unit holders, both plaintiffs and defendants. A number of the unit holders or beneficiaries who were made defendants failed to appear after being served with process, and their defaults were entered. Others appeared and filed answers to the complaint. Their answers consisted practically of denials of certain allegations of the complaint. The trustee filed an answer in which it joined with the plaintiffs in asking that the court declare its rights and duties under the declaration of trust, and furthermore, asked that the court direct it as trustee to accept the written order and direction

of two-thirds in interest of the beneficiaries as to all matters pertaining to the operation of the trust and for attorneys' fees in the pending action. The trial court found all the allegations of the complaint true, excepting certain allegations of minor importance not involving any issue before us on this appeal. It further found that all the denials and allegations in the respective answers of the defendants were untrue "in so far as the same are inconsistent with the foregoing facts". It further found that unless the trustee is given power to enter into a mineral, oil and gas lease, free from the restrictions as to sale, said trust property will greatly depreciate in value. The conclusions of law were followed in the judgment, which provided that as a matter of necessity for the preservation of the *corpus* of said trust the trustee is authorized to enter into a mineral, oil and gas lease, community or otherwise, the same to extend within or beyond the terms of the trust, and that said lease or leases, or any extension thereof, shall not be made subject to the sale of the property under the condition of said trust, and furthermore and for the same reason, the trustee was specifically authorized to accept directions in all matters pertaining to the operation of said trust, whether expressly provided therein or not, upon the written order and direction of two-thirds in interest of the beneficiaries under said trust. Of the numerous parties made defendants in the action, only two have appealed from the judgment of the trial court, F. P. Newport and Letitia A. Newport. F. P. Newport is not only a beneficiary under the trust, but he was one of the two trustors who owned the property which is the subject of said trust. He is also the owner of a sizable amount of the capital stock of a corporation that is drilling an oil well in the vicinity of the trust company. He owns four beneficial interests out of 250 such interests in the trust property.

It is first contended by appellants that the court was without jurisdiction, in the absence of pleading, issue, evidence or proof, in finding that unless said trustee is given power to enter into a mineral, oil or gas lease, "free from the restrictions as to sale, that said trust property will greatly depreciate in value". This contention is in our opinion without merit. While paragraph VII of the complaint is not in the precise language of said finding, it was suffi-

cient to authorize the court to make said finding, provided there was evidence to support the same. It was therein alleged that unless the trustee was authorized to make an oil and gas lease *to extend beyond the term of the declaration of trust*, the trust property would be depleted and rendered worthless. The declaration of trust provided that the trustee might lease the trust property, but any such lease "shall be made subject to sale of the property". No oil and gas lease of the trust property would be considered by the prospective lessees if it contained a condition that it was made subject to a sale of the trust property.

It was for the purpose of having the court, in the exercise of its equitable powers, relieve the trustee from this provision of the declaration of trust that plaintiffs instituted this action. They therefore alleged that unless the trustee was permitted to execute a lease "beyond the terms of the trust", the trust property would be rendered worthless, which was just another way of stating that unless the trustee was permitted to execute a lease free from the restrictions as to the sale of the trust property, it would become worthless. If the trust property should become worthless, it surely would "greatly depreciate" in value. There was then a proper pleading to support the finding in question. There was ample evidence in support of this finding. Wells were being drilled on adjacent and contiguous property and their admitted tendency would be to drain the oil and gas from the trust property, and Mr. Harris, of the Title Insurance and Trust Co., the trustee, stated that it would be impossible to lease the land for oil purposes subject to sale, for the reason that no oil company would pay a bonus for a lease with the possibility of having the property later sold. For the above reasons we are of the opinion that this first contention of appellants is without merit.

It is next contended that the trial court was powerless to change the terms of the declaration of trust so as to permit the trustee to enter into an oil and gas lease to extend beyond the terms of the trust indenture, or, in other words, a lease freed from the restrictions as to the sale of the trust property.

It is true as a general rule that courts are without authority to change the contracts of the parties, whether oral or written. This rule is well stated as follows:

"It is not the province of the court to alter a contract by construction or to make a new contract for the parties; its duty is confined to the interpretation of the one which has been made for themselves without regard to its wisdom or folly, as the court cannot supply material stipulations or read into the contract words it does not contain." (13 Cor. Jur. 525.)

The authorities declaring this rule are legion, but the rule is so universally recognized that it seems unnecessary to mention them here. A number of them are to be found in the footnote in support of the above text from Corpus Juris.

However, there is another factor present in the instant action, not present in the cases supporting the above rule, and that is that the property herein involved is held in trust, and the question before us is whether the powers of the trustee, as fixed by the declaration of trust, may, under the facts before us, be modified or in any way changed by a court of equity. That a court of equity has the power to change the method of administering a trust estate, when it is shown that such a change is necessary to prevent loss or destruction of the trust property, is well settled by the authorities. (*Pennington* v. *Metropolitan Museum of Art*, 65 N. J. Eq. 11 [55 Atl. 468]; 65 Cor. Jur. 792; *In re Pulitzer's Estate*, 139 Misc. 575 [249 N. Y. Supp. 87]; *Mertz* v. *Guaranty Trust Co.*, 247 N. Y. 137 [159 N. E. 888, 57 A. L. R. 1114].)

In the Pulitzer Estate, the deceased had by his will created a trust whereby there had been delivered to trustees large issues of stock in two publishing corporations, with directions to his trustees to hold the stock and pay the dividends to his children, the trust to continue during the lives of his two youngest sons, and, upon their death, the testator directed that said stock should be divided under varying conditions. No provision was made in the testator's will for a sale of the stock in any manner or under any conditions. After the death of the testator and during the lives of his two younger sons, an application was made to the court for an order authorizing the trustees to sell the stock in one of said publishing corporations on the ground that the said publication had during a number of years prior to said application been conducted at a loss and that the same condition prevailed at the time said application was before the court. After an extended review of the authorities, the

court held that it had the power to authorize the sale of said stock, although there was no express power given in the testator's will, empowering his trustees to make said sale. Among the authorities relied upon by the court in holding that it had such authority was the case of *Mertz* v. *Guaranty Trust Co., supra,* in which the opinion was written by Chief Justice Cardozo. In the Mertz case, which presented a similar factual situation to that in the Pulitzer case, the court said, "Enough for the present purposes that there is power." (Page 144.)

The above citation from Corpus Juris states the rule as follows:

"On a showing of reasonable necessity to effectuate the purpose of the trust, a court may authorize a trustee to make a lease beyond the termination of a trust." (Citing *Packard* v. *Illinois Trust & Savings Bank,* 261 Ill. 450 [104 N. E. 275] ; *Denegre* v. *Walker,* 214 Ill. 113 [73 N. E. 409 , 105 Am. St. Rep. 98, 2 Ann. Cas. 787].)

The following additional authorities support this rule: *Low* v. *First Nat. Bank & Trust Co., etc.,* 162 Miss. 53 [138 So. 586 [80 A. L. R. 112] ; *Stout* v. *Stout et al.,* 192 Ky. 504 [233 S. W. 1057] ; *Cary* v. *Cary,* 309 Ill. 330 [141 N. E. 156] ; *Marsh* v. *Reed,* 184 Ill. 263 [56 N. E. 306].

In the case of *Pennington* v. *Metropolitan Museum of Art, supra,* 65 N. J. Eq., at p. 22, the court said:

"If trustees disclose a situation of their trust in which a slavish adherence to the terms of the trust will operate to wholly prevent the benefits intended by its creator, and they seek instructions and directions as to their duty, I think that instruction and directions for a course of conduct which, though differing from that prescribed by the terms of the trust, will actually carry out the intent of the creator, may well be grounded upon and sustained by the necessity of the case. The benefits intended for the beneficiaries are the main subjects of consideration. The modes in which those benefits may be attained are incidental, and necessity may require a change of mode to produce the intended effect. The power of the court may well be exercised in a case of evident necessity. How far it may extend on other grounds need not be considered."

The facts in the present case bring it within the rule established by the authorities just cited. The trust property was

conveyed to the trustee for the benefit of the unit holders. It was the intent of the trustors that the unit holders or beneficiaries under the trust should secure the largest return possible on their investment. At the time of the creation of the trust it was not known, nor from what we gather from the evidence was it suspected that the trust property contained oil, gas or any mineral. It was thought, however, that the land had a prospective value for commercial purposes and the trustee was directed to sell the property at a fixed price, if it could be so sold before a given date. The trustee was unable to make a sale of the property under these conditions and no sale has been made. The trustee still holds the property and the unit holders are the owners of the entire beneficial interest therein. Recently oil has been discovered in the vicinity in which the trust property is located. The court found that the highest purpose for which said property is adapted is the production of oil and gas, and that it is unfit for any other purpose comparable to an oil and gas lease. The court found further, due to the fact that oil wells were being drilled upon land contiguous and adjacent to the trust property, that the *corpus* of the trust would be depleted and rendered worthless. It appears from these findings that, in the opinion of the trial court, the highest returns to the unit holders on their investments will be realized from a lease of the trust property for the production of oil and gas rather than a sale of the property or the use of the property for any other purpose.

It seems only reasonable to assume that had the trustors, at the time the trust was created, any knowledge that oil and gas could be produced from the trust property, they would have had the declaration of trust provide for a lease thereof for that purpose. In giving to the trustee this right to lease the trust property for the production of oil and gas, the court is only doing what the trustors would have done had they had the same facts before them then that were before this court at the trial of this action.

"Exigencies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the

trust, and do with the fund what he would have dictated had he anticipated the emergency.'' (*Curtiss* v. *Brown,* 29 Ill. 201.)

Another Illinois case involved an old-fashioned hotel, which was not fireproof. It was conveyed to trustees with a prohibition against a lease of the premises for a period longer than ten years. The trustees proved to the court that the income under a ten-year lease would be less than half the amount which could be realized from a ninety-nine-year lease, with a provision for the lessee constructing a new building. Since the income under the ten-year lease would be not sufficient to produce any income for the *cestuis,* the court authorized a ninety-nine-year lease. (*Marsh* v. *Reed,* 184 Ill. 263 [56 N. E. 306].)

■ It is perfectly clear from the above authorities that the rule against courts modifying the terms of a contract, and that they should construe it precisely as the parties had made it, does not apply to declarations of trust, where the primary purpose of the trust would not be accomplished by a strict adherence to the terms of the declaration of trust and that when it is made to appear in a court of equity, as was shown in the present case, that the benefits and advantages which the trustors desired to confer upon the beneficiaries would not accrue to them by ''a slavish adherence to the terms of the trust'', the court may modify the terms of the trust to accomplish the real intent and purpose of the trustors. This rule does not run contrary to any of the canons of construction of contracts contained in the Civil Code of this state, as these sections of the code are applicable to the legal interpretation of contracts as expressed by the parties, and have no reference to the equitable powers of a court of equity to modify the terms of a trust indenture in order to meet exigencies that have later arisen and which, unless the trust were modified, would defeat the prime purpose for which it was created.

We find no merit in the contention of appellants that the findings and judgment of the court are contrary to certain express rulings made during the trial of the case. Especially so is this true as the appellants have cited us to no ruling of the court made during the progress of the trial which is contrary to the findings and judgment as later made and rendered by the court.

■ Finally, appellants contend that the court erred in denying the offer of proof of appellants made during the course of trial as to the testimony of the witness, F. P. Newport. These appellants offered to prove by this witness that the trust property was salable at a certain price; that it was to the best interest of the beneficiaries that said property should be sold at or about said price, and that many of the beneficiaries were aged persons and a sale of the property would be far more to their advantage than a lease. We are unable to perceive how the appellants were prejudiced by the denial of this offer of proof. This action was tried by the court without a jury. The offer, stating the price at which it was claimed the property was salable, was before the court at the time it made its finding to the effect that the highest purpose for which the property of said trust is adaptable is for the production of oil and gas, and is unfit for any other purposes comparable to an oil and gas lease. We fail to see how this finding would have been any different had the court permitted the appellants to produce the evidence of the witness Newport. As to the contention that a number of the beneficiaries were aged persons and that a sale would be more to their advantage than a lease, we think the appellants are in no position to raise this issue. They were not aggrieved by the denial of the court to admit the offered proof, as the offered testimony did not purport to show that either of the appellants was in this class of beneficiaries. If there are any beneficiaries who, on account of their age, would be deprived of their rights by a lease rather than a sale of· said property, they are not before this· court making complaint against such a lease.

■ We have heretofore considered the judgment in this action as one rendered strictly in a court of equity and not under section 1060 of the Code of Civil Procedure for declaratory relief. An action brought under this section of the code for declaratory relief is an equitable proceeding. (*Rolapp* v. *Federal Building & Loan Assn.*, 11 Cal. App. (2d) 337, 342 [53 Pac. (2d) 974].) The remedies therein provided for are cumulative. (Code Civ. Proc., sec. 1062.) The powers of a court acting under this section in granting declaratory relief are as broad and extensive as those exercised by such court in any ordinary suit in equity. Under section 1060 of the Code of Civil Procedure the court was

empowered to render judgment authorizing the execution of the oil and gas lease without restrictions as to sale, as well as under its general equitable powers. (*Jones* v. *Interstate Oil Corp.*, 115 Cal. App. 302 [1 Pac. (2d) 1051].) That case in principle is in many respects like the instant case. It involved an oil and gas lease, which required the lessee to sink a well on the leased property to a stated depth. This was done. Thereafter it was discovered that there was a far more valuable deposit of oil sands at a greater depth and other wells in the vicinity began to drain oil from the leased premises. Thereupon the lessor brought an action under section 1060 of the Code of Civil Procedure and the court decreed therein that the lessee be required to drill a deeper well or permit the lessor to do so. This decree was sustained on appeal and it was held that it was proper under section 1060 of the Code of Civil Procedure and not in excess of the power granted therein. It would appear, therefore, that the judgment in this action may be sustained on either or both counts of the complaint.

We find no error in the record before us and are of the opinion that the judgment should be affirmed and it is so ordered.

Carter, J., Shenk, J., Gibson, J., Houser, J., Edmonds, J., and Waste, C. J., concurred.