MERCHANTS BANK & TRUST CO. *v.* GARRETT *et al.*

(In Banc.   January 26, 1948.)

[33 So. (2d) 603.   No. 36792.]

**Dent & Ward** and **Burkett H. Martin**, all of Vicksburg, for appellant.

**Green & Green**, of Jackson, for appellee.

Argued orally by **Garner Green,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

For several years next before the date first herein-after mentioned Mrs. Fannie Willis Johnson, a widowed resident of Vicksburg, had been interested in benevolent and charitable endeavors. She had a large estate which

she freely used for that purpose. As she approached the closing days of her life she conceived as her final and dominant plan and purpose the establishment and maintenance of a home for Protestant old ladies. To this end, on December 6, 1930, she conveyed to named persons as trustees of the Diocese of Mississippi, and their successors in office, her residence in Vicksburg with the stipulation that "the property hereby conveyed shall, after my death, be used solely as a home for Aged Protestant Women."

Two days thereafter Mrs. Johnson delivered to the appellant Merchants Bank and Trust Company state, county and municipal bonds in the aggregate face value of $110,000 under a declaration of trust by which the said bank should devote the entire net income from said bonds solely to the maintenance of the said Old Ladies Home, but the trustee was not authorized to use any part of the principal. It will not be necessary to further pursue the details of the deed and declaration of trust other than to say that except for the unforeseen contingencies, later to be mentioned herein, every necessary and appropriate provision was made in said instruments.

After Mrs. Johnson's death the home was opened sometime early in 1932. For that year and up to the end of the year 1936, the income from the endowment was sufficient to take care of all the expenses of the maintenance of the Home, but for the years 1937 to 1941 and from 1942 to 1946, the necessary expenditures have exceed the income —in 1946 the deficit being approximately $2,000. This was brought about by the facts, first, that many, if not most of the bonds originally deposited had matured and no other could be secured at an equal rate of interest, and secondly because of the rising costs of nearly everything that is necessary in the support of such a home.

The Home at first had been able to care for nine old ladies; lately the number has been reduced to seven. The management has been economical; there has been no waste, or extravagance or diversions of funds. The point

has simply been reached when the Home cannot be kept going on the income from its stated endowment, however well or economically managed it might be.

In this situation the Governing Committee of the Home presented its petition to the Chancery Court, making the Bank and all others concerned parties thereto, praying a decree from that court authorizing the bank as endowment trustee to sell sufficient of the corpus of the endowment from time to time to make up the difference between the income and the cost of maintaining the Home. The Court on a full hearing, all parties being present, made the order directing the bank to pay over to the Governing Committee not to exceed $6,000 per annum and to obtain that amount the bank could convert into cash such part of the corpus of the endowment as would be necessary to supply the difference between the income and the needed sum up to $6,000. From this decree the bank has appealed.

We have no doubt of the authority of the Chancery Court to make the decree, and we find that it is amply sustained by the facts. Under the terms of the deed the Johnson residence can be used for no other purpose than for a home for Aged Protestant Women. The facts show that unless the Court allows, as has been decreed by it, the residence must be vacated and thereupon will be untenanted and useless. Had Mrs. Johnson foreseen the situation which has now come about, it is hardly conceivable that she would have left her arrangements in such shape that the dependent inmates would be turned out, and her large residence left vacant, while the endowment would merely accumulate without being of any service to anybody.

The rule is summarized in Section 167 Rest. Law of Trusts as follows:

"The court will direct or permit the trustee to deviate from the terms of the trust if owing to circumstances not known to the settlor or not anticipated by him compliance would defeat or substantially impair the accom-

plishment of the purposes of the trust; and in such case, if necessary to carry out the purpose of the trust, the court may direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust.''

Our accord with that statement is sufficiently evidenced by Low v. First National Bank, etc., 162 Miss. 53, 138 So. 586, 80 A. L. R. 112, 113. A wealth of additional cases to the same effect will be found in the reporter's abstract of appellees' brief.

Affirmed.