[No. B025524. Second Dist., Div. One. Oct. 17, 1988.]

GORDON P. GETTY, as Trustee, etc., et al., Plaintiffs and Appellants, v.
CAROLINE M. GETTY et al., Defendants and Respondents.

**COUNSEL**

Lasky, Haas, Cohler & Munter, Moses Lasky, Richard Haas, Charles B. Cohler, Paul, Hastings, Janofsky & Walker, George E. Stephens, Jr., and Robert S. Span for Plaintiffs and Appellants.

Brobeck, Phleger & Harrison, Edmond R. Davis, John A. Payne, Jr., Latham & Watkins, Philip F. Belleville, Michael R. Whalen, Linda M. Inscoe, Butler, Butler & Osborne, James G. Butler, Kirtland & Packard and Robert C. Reback for Defendants and Respondents.

**OPINION**

**ORTEGA, J.—**

FACTS

Respondents Caroline Getty, Anne Getty Earhart, and Claire E. Getty, are daughters of George F. Getty II, the deceased son of J. Paul Getty. They are the current income and presumptive remainder beneficiaries under the Declaration of Trust of Sarah Getty. Appellant Gordon P. Getty, the son of J. Paul Getty, is a trustee of the estate and an income beneficiary. The other appellants, children of Gordon P. Getty, are contingent beneficiaries under the declaration of trust.

The trust, created in 1934 by J. Paul Getty and his mother Sarah C. Getty, was created ". . . to preserve the business [Getty Oil Company] and always to build up, consolidate and hold control of it as a growth enterprise and never by any means to dissipate that control or any part of it." (*Getty* v. *Getty* (1972) 28 Cal.App.3d 996, 1000 [105 Cal.Rptr. 259].)

Article VII of the trust prohibits the successor trustees from selling the Getty Oil Company shares held in the trust unless it is necessary "to save the trust estate from a substantial loss."

In 1973, J. Paul Getty appointed his successors as trustee: (1) Gordon P. Getty; (2) C. Lansing Hays, Jr.; and (3) Security National Bank. Gordon P. Getty became sole trustee after C. Lansing Hays, Jr.'s death in 1982.

Until 1984, the trust estate consisted mainly of approximately 40.2 percent of the then outstanding capital stock of Getty Oil Company. Gordon Getty was also the largest shareholder.

On December 28, 1983, a wholly-owned subsidiary of Pennzoil offered to buy shares of the Getty Oil Company's common stock.

In January 1984, Texaco made a tender offer for acquisition of Getty Oil Company shares. On January 6, 1984, Getty Oil Company entered into a merger agreement with Texaco, and a 12 percent stockholder, the J. Paul Getty Museum, agreed to sell all its Getty Oil Company stock to Texaco. The trustee was restrained by Judge Byrne from entering into any agreement with respect to the 40.2 percent of Getty Oil Company stock held in trust, but that order was lifted two days later. On January 8, 1984, the trustee entered a written agreement to sell Texaco the trust's shares.

On January 23, 1984, Judge Byrne entered an order approving the trustee's sale agreement, binding as between Texaco and the trustee and the beneficiaries.

On January 23, 1984, in a civil action entitled Texaco, Inc. v. Warren, et al., Los Angeles Superior Court No. C 483382, final judgment determined by stipulation that between Texaco and the beneficiaries of the trust, the agreement for the sale of the trustee's stock to Texaco was proper and not in conflict with the terms of the trust.

On February 17, 1984, the trustee sold the stock of Getty Oil Company to Texaco for over $4 billion. The Texaco directors also agreed to indemnify the trustee in the event the trustee suffered damages as a result of the sale of stock to Texaco.

On June 8, 1984, the daughters of George F. Getty II filed a petition to remove and surcharge Gordon P. Getty as trustee because the sale of stock violated the terms of the trust.

The trustee filed a response, and the daughters of Gordon Getty filed an amended petition. That and other petitions relating to Gordon P. Getty's status as trustee are pending.

As a result of the sale of all the outstanding shares, including the trustee shares, of the Getty Oil Company stock to Texaco, Pennzoil sued Texaco alleging Texaco intentionally procured the breach of the Pennzoil/Trustee contract. Pennzoil obtained a judgment against Texaco for over $12 billion, later reduced by $2 billion by the Texas Court of Appeal.

Various Texaco shareholders brought derivative actions in Texas, Delaware and New York, alleging the sale of the trust's Getty oil stock to Texaco was improper and seeking to void the Texaco indemnification agreements. Some of the actions were against Gordon P. Getty as trustee or were against the trust. The third party plaintiffs in these derivative actions attempted to compel the Getty trust estate to share with Texaco, or assume the judgment against Texaco in Pennzoil v. Texaco, No. C 483382 (1984).

On November 13, 1986, the daughters of George F. Getty II petitioned for partial and temporary removal and suspension of powers of the trustee, and appointment of a "trustee ad litem" to represent the trust and the beneficiaries in the third party lawsuits. On January 27, 1987, Judge Epstein granted the petition, suspended certain powers of the trustee, and appointed retired Judge Lester E. Olson as "trustee ad litem" with respect to those powers. The trial court specifically found "irreconcilable conflicts" between

Gordon Getty's personal interests and those of the trust estate and its beneficiaries which disqualified him from defending the lawsuits as trustee. The order permitted Gordon Getty to defend the lawsuits in his individual capacity.

Appellants appealed from the order,[1] and petitioned for writs of supersedeas, prohibition, or mandate.

The petitions in the Court of Appeal and the Supreme Court were denied.

CONTENTIONS

Appellants assign two points of error: (I) The trial court exceeded its jurisdiction in suspending the trustee, without any evidence of actual wrongdoing; and

(II) There is no such "creature" as a "trustee ad litem." Even if a conflict of interest exists, it does not require the creation of such a "novel creature of law" as a "trustee ad litem."

Appellants also make the following subsidiary arguments in support of their contentions:

(III) Res judicata bars examination of whether the trustee acted ultra vires in selling the stock, and therefore the appointment of a trustee ad litem is pointless; and

(IV) Even if a "trustee ad litem" exists, it is unnecessary because each beneficiary could unilaterally solve the problem.

DISCUSSION

I

■ Appellants allege there must be evidence of actual wrongdoing to remove a trustee who has been given broad powers under the trust, including the powers to make compromises or settlements.

We disagree. The purpose of removing a trustee is not to inflict a penalty for past action, but to preserve the trust assets. (*Moore* v. *Bowes* (1937) 8 Cal.2d 162, 165 [64 P.2d 423].) "The question in each case is whether the circumstances are such that the continuance of the trustee in office would be

---

[1] An appeal lies under former Probate Code section 1138.1, subdivisions (a)(8) or (10), repealed on July 1, 1987, now Probate Code section 17207.

detrimental to the trust," (2 Scott on Trusts (4th ed. 1987) The Trustee, § 107, p. 104.)

Therefore, assuming the existence of some legally proper ground for his removal, there need be no evidence of actual past wrongdoing by the trustee to justify his removal.

## II

Appellants argue there is no actual "conflict of interest" justifying removal of the trustee, and there are no grounds to suspend the trustee's powers to conduct litigation.

California statutes authorize appointing and removing a trustee (Prob. Code, § 17200, subds. (a)(8), (10)), and give the court power to make decrees and take other necessary action to dispose of matters presented by the petition. (Former Prob. Code, § 1138.2, now Prob. Code, § 17206.)

Cases and statutes consistently state that a trustee may be removed where there is a conflict of interest between the trustee's interests and those of the trust. (See former Civ. Code, § 2233, now Prob. Code, §§ 15642, subd. (b), 16002, and 16004; *Estate of Keyston* (1951) 102 Cal.App.2d 223, 227-228 [227 P.2d 17] (disapproved on other grounds in *Estate of Schloss* (1961) 56 Cal.2d 248, 256 [14 Cal.Rptr. 643, 363 P.2d 875]; *Estate of Vokal* (1953) 121 Cal.App.2d 252, 258 [263 P.2d 64].)

In the case at bar, the conflict of interest arises from the rules regarding the rights of the creditors and the trustees' indemnification rights.

A trustee is entitled to indemnity from the trust estate for expenses properly incurred in the administration of the trust, and the rights of the creditor are no greater than those of the trustee. (3A Scott on Trusts (4th ed. 1987) Liabilities to Third Persons, § 268.2., pp. 471, 472.)

However, if a trustee exceeds his powers, he is not entitled to exoneration and the creditor cannot reach the trust estate. But, if the trustee exceeds his powers and the estate thereby benefits, the trustee is entitled to indemnity to the extent the benefit was conferred on the trust estate. (3A Scott on Trusts, *op cit. supra,* §§ 245.1, p. 338, 268.2, pp. 471, 472, § 269.1, p. 481.) In such a situation the creditor can reach the trust estate, not for the full amount of the claim, but to the extent the trust is benefited. (3A Scott on Trusts, *op. cit. supra,* at pp. 471, 472, 481.)

Therefore, it is in the interest of the trustee and the third party plaintiffs to show that the trustee is entitled to be exonerated from the trust

estate, either because he properly incurred the obligation in the administration of the estate, or, if he exceeded his powers, that the estate thereby benefited.

Since the interests of the third party plaintiffs and the trustee are similar and inimical to those of the beneficiaries who seek to preserve the trust assets, there is a sufficient showing that Gordon P. Getty's personal interests conflict with the interests of those beneficiaries seeking only to preserve the assets of the trust.

Appellants argue that whether or not there was a conflict of interest, where the trustor is fully aware of possible conflicts inherent in the appointment, the court will remove the trustee only for extreme grounds and not where there is a potential conflict of interest, citing *Copley* v. *Copley* (1981) 126 Cal.App.3d 248 [178 Cal.Rptr. 842]. While this is a correct statement of the law, there is no showing here that the trustor knew of any potential conflict of interest. Cases stating the *Copley* rule rely on the conflict of interest being fully known to the appointing party. (*Estate of Gilliland* (1977) 73 Cal.App.3d 515, 528 [140 Cal.Rptr. 795].)

 The trial court did not completely remove the trustee and replace him with a fully empowered successor. Instead, the trial court suspended the trustee's powers regarding only the third party litigation, and appointed a "trustee ad litem" with limited powers to conduct the litigation. Appellants argue that even if there is a conflict of interest, there is no such "creature" in California law as a "trustee ad litem" with limited powers to conduct litigation.

It has been held that where a trustee is removed as to *part of the trust property* and permitted to continue as the trustee as to the balance, the appointment is invalid. (*McCrillis* v. *McCrillis* (R.I. 1930) 149 A. 799, 800.) However, the *McCrillis* court determined that dividing a trust into two separate estates, each administered by a separate trustee, inevitably leads to confusion and disputes as to their respective powers and duties. In the case at bar, the suspension of the trustee's powers solely as to litigation of certain third party claims would not lead to the confusion or disputes discussed in *McCrillis*. On the contrary, the division of powers in such a situation is clear and the trustee ad litem's powers are appropriately defined.

The appointment of a trustee ad litem was a proper exercise of the court's general equity jurisdiction. Since the court has the power to remove a trustee entirely in the exercise of its general equity jurisdiction (Prob. Code, §§ 15642, 16420, 17000, former Civ. Code § 2283; *Estate of Schloss, supra,* 56 Cal.2d at pp. 254-255; *Fatjo* v. *Swasey* (1896) 111 Cal. 628, 635-636 [44

P. 225]; *Estate of Gilmaker* (1962) 57 Cal.2d 627, 630 [21 Cal.Rptr. 585, 371 P.2d 321]), the removal from the existing trustee of his power to conduct certain lawsuits and appointment of a trustee ad litem, where there is a conflict of interest, are also an exercise of that general equity jurisdiction. As courts may entirely remove a trustee and appoint a replacement (see *Bowles* v. *Superior Court* (1955) 44 Cal.2d 574, 584 [283 P.2d 704]), appointment of a trustee ad litem with limited powers to conduct certain litigation is an intrinsically included exercise of the court's inherent equity power within its greater power to remove and replace the trustee.

■ The California courts have long had the equity power to modify the terms of a trust where necessary to preserve it or to preserve the original intentions of the trustor. (*Stewart* v. *Towse* (1988) 203 Cal.App.3d 425 [249 Cal.Rptr. 622, 623], citing *Adams* v. *Cook* (1940) 15 Cal.2d 352, 358, 361 [101 P.2d 484].) ■ In the case at bar the appointment of the trustee ad litem was such a modification necessary to preserve the trust assets.

While a trustee ad litem may be novel in California, other jurisdictions have appointed them under certain circumstances. (See *Selig* v. *Morrison* (1959) 230 Ark. 216 [321 S.W.2d 769, 772-773]; *In re Kenna's Estate* (1943) 348 Pa. 214 [34 A.2d 617, 619]; *Browne* v. *Maxwell* (1927) 288 Pa. 398 [136 A. 232, 234].)

Appellants argue that because the trustee would always seek exoneration, *any* third party claim against *any* trust creates a theoretical possibility of an inherent conflict of interest. We decline the invitation to engage in the endless speculation necessary to resolve that argument. In any event, that is not the point. Even if appellants' contention is true, that doesn't alter the fact that a trustee ad litem having no conflict of interest is in a better position to guide the trust through litigation.

### III

Appellants claim that as res judicata bars examination of whether the trustee acted ultra vires in selling the stock, the appointment of a trustee ad litem is pointless.

Although a judgment by consent stipulation is as conclusive a bar as a judgment after trial (*Ellena* v. *State of California* (1977) 69 Cal.App.3d 245, 259 [138 Cal.Rptr.110]), that is an issue to be dealt with in the pending third party lawsuits.

## IV

We do not discuss appellants' final contention[2] which includes no citation to the record, no cases, and only a minimal explanation. (See *People* v. *Rojas* (1981) 118 Cal.App.3d 278, 288-290 [173 Cal.Rptr. 64, 174 Cal.Rptr. 91].)

Discussion of appellants' last two contentions would require inordinate speculation about possible issues and arguments in other third party lawsuits not before this court. We may not, nor could we, speculate on all the conceivable issues and arguments that could possibly arise in cases not before us.

### DISPOSITION

The judgment is affirmed.

Hanson (Thaxton), Acting P. J., and Devich, J., concurred.

---

[2] Appellants' final contention reads in its entirety, as follows: "D. A Further Fallacy: Even if There Were a Problem, Each Beneficiary Could Intervene and Solve the 'Problem' Unilaterally; No 'Trustee ad Litem' Would Be Necessary Even if Such a Thing Existed.

"The beneficiaries who sought the 'trustee ad litem' Order are not parties to the third-party litigation, and they will not be bound by anything decided in it *vis a vis* the Trustee. Even if any of them believed to the contrary, he or she could simply *unilaterally* intervene to protect his or her interest. No 'trustee ad litem' is necessary to solve such a 'problem'; existing procedures suffice. The beneficiaries can each solve the supposed problems by self-help."