Filed 8/26/20  Selander v. Valentine CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DEREK SELANDER et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> JAMES VALENTINE, as Trustee, etc., <br><br> Defendant and Appellant. | H039828 <br> (Santa Clara County <br> Super. Ct. No. 1-08-CV-112230) |

This appeal involves a long running dispute over the administration of a life insurance trust (hereinafter, "KMP Trust").  Appellant James Valentine appeals from an order removing him as trustee of the KMP Trust.  Valentine challenges the order on several grounds.  We reject his contentions and affirm the order.

## I. BACKGROUND

### A. *Prior Case History*

Respondents Kurt and Derek Selander are the beneficiaries of a life insurance trust, which was established by Kurt and Derek's mother, Kelsey Phipps, to provide for the " 'health, maintenance, education, travel, and welfare, and general welfare' " of her two sons.  Phipps died in October 2000.  In May 2001, the KMP Trust was funded with $20,524,234 from the proceeds of Phipps's life insurance policy.  Hal Selander, their father, became guardian to Kurt and Derek, who were still minors at the time.

Valentine knew Phipps personally and had helped her to set up the trust while Phipps was alive.  Phipps named Valentine as trustee.  Valentine set his annual compensation at $250,000.  Between 2001 and 2004, Valentine pursued an investment

strategy of buying and holding high tech stocks, on behalf of the trust, for very short periods of time. His practice was to sell the stocks when the stock price increased, but not sell them when the price fell, which resulted in short-term gains, but unrealized long-term losses. Starting in 2005, the beneficiaries began to request detailed financial reports and eventually demanded formal accountings. Substantial litigation over the accountings ensued, and ultimately Valentine was suspended as trustee. Following Valentine's suspension, the litigation continued, including numerous appeals to this court.[1]

A petition to remove Valentine as trustee was filed by Hal Selander, as guardian for Kurt, and later joined by Derek, and the interim trustees, who added a petition for surcharges as damages. The petition to remove Valentine as trustee stated the following grounds for removal: breach of the duty to provide beneficiaries with information under Probate Code section 16060 et seq.,[2] breach of the duty of loyalty under section 16004, and violation of sections 16006 and 16007 for failure to preserve trust property consistent with the Prudent Investor Act.

Following the trial, the court made a number of findings. It found that Valentine failed to report to the beneficiaries as required under section 16060 et seq. The court also found that Valentine had breached his duty of loyalty by doing the following: by paying himself excessive compensation before the trust was funded, by failing to adjust his compensation downward as the value of the trust decreased, by failing to provide adequate accountings, by resisting reasonable requests for information from the beneficiaries, and by failing to comply with court orders. The court also concluded that

---

[1] These appeals addressed insufficient accountings, sanctions, discovery, a SLAPP motion, and a petition to remove Valentine for insolvency under Probate Code section 15642, among other issues. (See *Guardianship of K.S.* (2009) 177 Cal.App.4th 1525; *Burdett v. Doyle* (Dec. 15, 2009, H033061) [nonpub. opn.]; *Selander v. Valentine* (Aug. 30, 2010, H034324) [nonpub. opn]; and *Burdett v. Caselli* (Sept. 29, 2010, H033356) [nonpub. opn.].)

[2] Subsequent statutory references are to the Probate Code unless otherwise provided.

Valentine's investment practices violated the Prudent Investor Act. However, because the trust instrument gave Valentine " 'absolute discretion' " in investing, the court found that Valentine's "unconventional investment strategy"[3] did not amount to a violation of his duty to preserve trust property.

Ultimately, although the trial court acknowledged it could have removed Valentine, the court declined to impose the requested remedy of removal. Rather, the court reinstated Valentine with conditions, requiring him: to pay sanctions incurred in the litigation to the trust, to limit administrative costs to a fixed percentage of the value of the trust, and to return some of his earned fees as a surcharge for his breaches of trust. The court concluded: "Valentine may have been well-meaning but he was marginally competent in his trust management. What is most troubling is his unrepentant attitude concerning his investment strategy. His limited success in short-term trading was principally the result of luck and good-fortune and not the result of a well-designed and sophisticated plan of investment. He failed to take advantage of professional investment advice. He put the assets of the Trust a[t] considerable risk and acted irresponsibly in failing to recognize his limitations as a trustee. He would have disappointed the Settlor's trust she put in him. Did he technically violate the terms of the Trust in his investment actions? No, because of the unfettered discretion it gives him. But he did violate the duty to account and the duty of loyalty and with that he came very close to being removed for mismanagement. Any future failure will certainly be evaluated in light of these transgressions."

---

[3] An expert testified that had Valentine simply invested the trust assets in a total stock market index fund and a municipal bond fund over the same time period, he could have made the trust an additional $4 million. As it was, the expert calculated that the net of Valentine's short-term gains against his long-term losses was $616,657.

In February 2012, this court affirmed the trial court's decision, concluding that the court's chosen remedy was a permissible exercise of its discretion. (*Burdett v. Olson & Le* (Feb. 9, 2012, H035152) [nonpub. opn.].)

### B. Subsequent Proceedings

At a May 2012 hearing, the trial court expressed its view that its "primary objective" going forward would be to "preserve the trust funds for the beneficiaries." The court explained that this case had been "scandalously over-litigated . . . for years, inuring to the benefit of lawyers and experts and not the beneficiaries." The court encouraged the parties to engage in "serious discussion about the pending issues to see if this matter can be resolved."

In June 2012, the court directed Valentine to "either hire a professional to manage the investments or provide by July 31 a written investment strategy and plan for the administration of the trust with cost projections," and the court barred the parties from initiating "any litigation or spend[ing] any trust dollars on legal fees before" the next hearing.

At an August 2012 status hearing, the court expressed its disappointment that "there's been virtually no progress in resolving the multitude of issues in this case" since the parties last met. The court indicated it was encouraged that there was apparently "some discussion as to a global settlement." At the conclusion of the hearing, the parties agreed to go to mediation.

At a November 2012 status hearing, the trial court learned that Valentine intended to retain new counsel. As a result, Valentine's former attorney sought permission from the court to be paid from the KMP Trust. The beneficiaries agreed to pay Valentine's former attorney a fixed fee of $500,000 from the trust. Valentine's former attorney agreed to the compromised fee. Valentine objected and requested a continuance, but the court nonetheless approved the fee request. The beneficiaries then requested a court order to release trust funds to pay the mediation fee, as Valentine had not yet consented

4

to payment. Valentine again objected. After the court indicated its intention to "set a special hearing . . . on the question of whether or not Mr. Valentine should be removed as the trustee if" he did not direct payment of the mediation fee, Valentine relented and agreed to direct payment. The court then closed as follows: "This dispute has lingered much too long. Much too much has been spent, and I'm chagrined that the purposes of the trust have been thwarted. It is clear that a different approach needs to be taken and the litigious past needs to be abandoned."

In December 2012, the beneficiaries filed a status report. In it, they informed the court that they intended to file a petition to remove Valentine as trustee. The beneficiaries reported that they had come to an agreement regarding outstanding fees, but that Valentine was not a party to the agreement because Valentine and his attorney left the mediation after they claimed that "they did not have all of the documents necessary to address the issues." The beneficiaries also asserted that Valentine had not cooperated in the effort to pay Valentine's former attorney. Finally, the beneficiaries contended that Valentine had neither hired a professional financial manager nor submitted an investment strategy, in violation of the court's prior directions.

Later that month, the court held a hearing. After some discussion on the issue of paying Valentine's former attorney, the court learned that Valentine no longer objected and had directed that the payment be made. The court then moved to discuss the ongoing mediation and the beneficiaries' status report. Valentine disputed the substance of the status report. The beneficiaries' attorney asserted that Valentine had "all the documents," which was "more than enough information to resolve the fee issue . . . ." He asked the court to "set a hearing to confirm that settlement," and offered that "this is another— excuse me for editorializing—example of how this is not working with Mr. Valentine." Based on the claimed lack of documents, the court ordered Valentine to identify any documents that he needed from any party regarding the fee dispute. The court also stated it would discuss the request for Valentine's removal at a future hearing.

5

At a March 2013 status hearing, the court received a status update on the mediation. The substance of the report was that the latest mediation was "unsuccessful in part because" Valentine's new attorney "left the mediation." Valentine's attorney admitted he left for a "badly needed" dental appointment, but that he had his cell phone and Valentine stayed at the mediation. Valentine's attorney admitted that he accepted the dental appointment after the mediation session had been scheduled, but believed he was "within easy driving to get back to it if any progress was being made." The court then inquired as to the status of the contingent settlement agreement reached in the prior mediation. Valentine's attorney indicated that he was unable to advise Valentine on whether to accept it because they needed to receive "all the documentation that was told to us was available . . . ." The court then noted that Valentine had failed to timely identify, as the court had previously ordered, any missing documents he required to proceed with settlement discussions. After the hearing, the court ordered Valentine to serve on counsel for the beneficiaries, by March 18, 2013, copies of the most recent account statements from all financial institutions that hold trust assets.

On May 8, 2013, the beneficiaries filed a petition to remove Valentine as trustee. The beneficiaries alleged that since his reinstatement, Valentine had done nothing to advance the purpose of the trust. Instead, they alleged that Valentine had caused the parties to incur substantial legal fees to obtain court approval "of actions [that] all [parties] agreed upon." The beneficiaries also alleged that Valentine failed to approve stipulations and orders for trust payments to the beneficiaries on a timely basis, that he failed to provide them with current account statements from financial institutions that hold trust assets, that he had failed to timely provide them with K-1's so they could file their individual tax returns, and that he had failed to comply with court orders. The beneficiaries also asserted that since his reinstatement, Valentine had been a hostile trustee who sought retribution for the prior effort to remove him. They noted Valentine's failure to make any good faith efforts to resolve any of the fee disputes.

6

Valentine filed a response on June 7, 2013, in which he specifically denied the allegations in the petition and requested an evidentiary hearing.

A hearing on the removal petition was held on June 17, 2013. The court stated initially that it had set the hearing for one hour, but after receiving the response from Valentine "asking for an evidentiary hearing," the court extended the hearing to three hours. Before the hearing began, an attorney for Valentine announced that he was making a special appearance to request a continuance to allow him to prepare for the evidentiary hearing. The attorney stated that Valentine had contacted him the prior Wednesday about representation in this proceeding. He stated that he only learned on Friday that the proceeding would be an evidentiary hearing, and so he needed a "short continuance" to prepare. He further stated that if the court denied a continuance, he "would not be able to proceed today in any capacity" and Valentine would represent himself.

The beneficiaries' attorney asserted that it had been "known for a number of months" that the beneficiaries would proceed with another petition to remove Valentine as trustee. He also asserted that the beneficiaries would suffer detriment from a continuance because "[t]he assets in this trust have not been attended to" for some time. He noted that Valentine had not filed the requisite noticed motion, ex parte application, or declaration in support of a continuance. Even overlooking that the request was procedurally improper, the beneficiaries' attorney argued that Valentine had not established grounds for a continuance.

The court denied the request for a continuance. The court recalled that the issue of Valentine's removal as trustee had been raised months earlier, that the court had promised it would calendar the trustee removal issue if the parties could not resolve it, and "[t]his has been pending for some significant period of time." The court determined that granting the continuance would be detrimental to the trust and prejudicial to the beneficiaries, as the trust funds "have not been overseen by anyone managing those funds

7

. . . since August of last year." The court also observed that this attorney is "the tenth lawyer representing Mr. Valentine in this matter," "[a]nd, by my count, there have been five in the last 12 months." The court noted that Valentine's prior counsel, who "to [the court's] knowledge was still [Valentine's] counsel until he resigned here today," had "sent me a letter responding to this petition." The court opined that Valentine's "decision to keep changing lawyers . . . is part of the problem in this case."

The hearing then proceeded with Valentine representing himself in pro per. Under cross-examination, Valentine admitted that he did not provide trust account financial statements to the beneficiaries in accordance with the court's prior orders. Rather, he admitted he had only provided statements "for every single account" on the previous Friday. He also admitted that he had not done an accounting of trust assets since his reinstatement as trustee.

Valentine was asked whether he "refused to participate in [the first] mediation because [he] took the position that [he] did not have sufficient records" to proceed. He denied that he had done so, and also stated that the question was a violation of mediation confidentiality under the Evidence Code. He admitted that prior to the mediation, he did not attempt to settle any of the fee claims because, in his view, "[t]hey were not interested in any settlements whatsoever." He denied leaving the second mediation early after his attorney left for a dental appointment. He admitted that he did not sign the settlement agreement that resolved those fee issues. He conceded that "in the last seven years" he had not agreed to settle "any issue" and, more specifically, that he had not "agreed to any resolution of any issues" since mediation ended.

When asked if he actually wrote the investment plan that he claimed to have created, Valentine responded that he put it together after downloading "[o]ver a dozen" samples from the internet. When asked what percentage of the investment plan came from the sample investment plans, Valentine responded, "I don't know."

8

Derek testified that he had not received any financial statements that reflect trust assets during the last 12 months. He stated that he had asked for this information many times, but Valentine either did not respond or responded with incomplete information. He stated that he asked Valentine for an account of trust assets in March 2013, but never received an accounting. He also reported that he asked for a K-1 from the trust so that he could complete his individual tax return, and Valentine responded by recommending that he "[j]ust guesstimate [his] taxes."

Derek testified that he ran "specific string searches on Google for unique contents" in Valentine's investment plan, and discovered that 80 percent of the contents of Valentine's investment plan were copied from another investment plan that Derek found on the internet. Derek admitted that he does "not feel comfortable giving Valentine" certain information, because "[d]ealing with Valentine, I can honestly say he's either delusional or a pathological liar. I do not trust him at all."

At the close of the hearing, the court addressed the parties. The court expressed its disappointment with Valentine's assessment that he had complied with the court's prior orders. In the court's view, "there's no question that Valentine and his attorneys began the scorched-earth practice" of litigation involving the KMP Trust. The court found that there was "clearly animosity between Mr. Valentine and the beneficiaries." The court continued: "Further, there have been essentially two things that have . . . happened that . . . are significant failures. One is the failure to provide a resolution of [the] professional fees issue. This was failed on a number of grounds." First, Valentine "opposed paying his own attorney fees . . . even after that attorney compromised his fees . . . ." Second, "he failed to timely identify documents that he needed to participate in the mediation process. The Court set a time-line for that. And it wasn't met."

The court also found that Valentine provided statements to the beneficiaries on an untimely basis. The court determined that Valentine violated the court's order to provide trust account statements to the beneficiaries by March 18, 2013. And, since his

9

reinstatement, the court found that there had been "no regular reporting" of financial information to the beneficiaries. The court closed as follows: "Mr. Valentine, you just don't seem to understand. You don't seem to get it. Therefore, you're going to be removed as the trustee of this KMP trust by court order today. You will no longer have that responsibility."

The court later issued an order after evidentiary hearing removing Valentine as trustee of the KMP Trust.

## II. DISCUSSION

### A. *Request for Continuance*

Valentine argues that the trial court erred by not granting his request for a continuance.

In civil cases, continuances of trial are disfavored, the assigned trial dates are firm, and parties and their counsel must regard the trial date as certain. (Cal. Rules of Court, rule 3.1332(a) & (c).)[4] A party seeking a continuance must make the request by a noticed motion or an ex parte application, with supporting declarations, as soon as reasonably practicable once the need for the continuance is discovered. (Rule 3.1332(b).) And then, the trial court "may grant a continuance only on an affirmative showing of good cause requiring the continuance." (Rule 3.1332(c).) Good cause may be found where there is a "substitution of trial counsel, but only where there is an affirmative showing that the substitution is required in the interests of justice." (Rule 3.1332(c)(4).) In ruling on a motion for continuance, the trial court must consider all relevant facts and circumstances, including the proximity of the trial date; whether previous continuances were granted; the length of the requested continuance; prejudice that parties or witnesses will suffer as a result of a continuance; whether the case is entitled to preferential trial setting; and whether the interests of justice are best served by a continuance. (Rule 3.1332(d).)

---

[4] Subsequent undesignated rule references are to the California Rules of Court.

We review the trial court's denial of a request for a continuance under the abuse of discretion standard. (*County of San Bernardino v. Doria Mining & Engineering Corp.* (1977) 72 Cal.App.3d 776, 784.) We will disturb the trial court's determination only where there has been a clear case of abuse and a miscarriage of justice. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331.)

In this case, the trial court did not abuse its discretion in denying Valentine's request for a continuance. Significantly, the request was not made by a noticed motion or ex parte application; rather, the matter was raised orally on the date set for the evidentiary hearing. It was also not made when Valentine ascertained the need for continuance prior to the hearing. The trial court specifically found that the current trustee removal petition had been pending for a "significant period of time," and so Valentine had advance notice that he would need to retain counsel. In sum, the request was procedurally inadequate and untimely.

In addition, Valentine failed to show good cause that his substitution of attorneys was in the interests of justice. In considering the request, the court properly considered the relevant circumstances of the case, including the fact that Valentine's new attorney would have been his tenth attorney in this matter, and his fifth attorney in the last 12 months. The court also properly considered whether a continuance would prejudice the other parties, including the beneficiaries, finding that the trust assets had been unattended and unmanaged for quite some time, and another delay would be detrimental to the trust. Under these circumstances, the interests of justice would not have been served by a continuance. Accordingly, the trial court did not abuse its discretion by declining to grant a continuance.

**B. *Removal of Trustee***

### *1. The Trial Court Did Not Abuse Its Discretion*

Valentine challenges his removal as trustee, arguing that there were insufficient grounds to justify it.

11

"A trustee may be removed in accordance with the trust instrument, by the court on its own motion, or on petition of a settlor, cotrustee, or beneficiary under Section 17200." (§ 15642, subd. (a).)  Section 15642, subdivision (b) sets forth grounds for removal of a trustee, which includes "[w]here the trustee has committed a breach of the trust" and "[w]here the trustee fails or declines to act."  The breach of the duty of loyalty, or any of several other statutory duties, is considered a breach of trust.  (§ 16400.)  A trustee has a duty of loyalty to administer the trust solely in the interest of the beneficiaries (§ 16002, subd. (a)), to keep beneficiaries "reasonably informed of the trust and its administration" (§ 16060), and "on reasonable request by a beneficiary, the trustee shall report to the beneficiary by providing requested information to the beneficiary relating to the administration of the trust relevant to the beneficiary's interest." (§ 16061.)  Section 16062 sets forth a trustee's obligation to provide an annual accounting of trust assets to each beneficiary.

In addition, "[h]ostility between the beneficiary and the trustee is a ground for removal of the trustee when the hostility impairs the proper administration of the trust." (*Estate of Gilmaker* (1962) 57 Cal.2d 627, 632 (*Gilmaker*).)  "The purpose of removing a trustee is not to inflict a penalty for past action, but to preserve the trust assets.  [Citation.]  'The question in each case is whether the circumstances are such that the continuance of the trustee in office would be detrimental to the trust.' " (*Getty v. Getty* (1988) 205 Cal.App.3d 134, 139-140 (*Getty*).)

"The removal and substitution of a trustee is largely within the discretion of the trial court." (*Gilmaker*, *supra*, 57 Cal.2d at p. 633.)  We therefore review an order removing a trustee for an abuse of discretion.  (*Trolan v. Trolan* (2019) 31 Cal.App.5th 939, 957 (*Trolan*).)  The trial court's factual findings, in turn, are reviewed for substantial evidence.  (*Khani v. Ford Motor Co.* (2013) 215 Cal.App.4th 916, 920.)  "We measure the trial court's exercise of discretion against the legal principles governing the subject of its action.  [Citations.]  ' "The scope of discretion always resides in the particular law

12

being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion." ' " (*Trolan*, at pp. 957-958.) " 'To determine if a court abused its discretion, we must thus consider "the legal principles and policies that should have guided the court's actions." ' " (*Id.* at p. 958.)

In this case, substantial evidence supports the trial court's findings that Valentine breached several statutory duties owed by a trustee, including his duty to keep the beneficiaries reasonably informed of the trust and its administration and his duty to provide information when requested by a beneficiary. Derek reported that Valentine failed to adequately respond to his requests for financial information and account statements of trust assets, and that Valentine failed to provide requested tax information, instead advising Derek to "guesstimate [his] taxes."

Substantial evidence also supports the trial court's finding that Valentine failed to follow court orders to identify documents that he needed to settle the fee claims and to provide trust account statements by March 18, 2013. When a trustee "fails or declines to act," as Valentine did here, he is subject to removal. (§ 15642, subd. (b).)

Finally, substantial evidence supports the trial court's finding that animosity between the trustee and the beneficiaries impaired the administration of the trust. Derek testified that Valentine was either "delusional or a pathological liar," and as a result he "did not trust Valentine." The record reflects Valentine was unable or unwilling to settle past grievances and put aside his documented tendency toward scorched-earth litigation involving the KMP Trust. It was a reasonable inference that Valentine's conduct reflected an intense "animosity between [him] and the beneficiaries." In short, substantial evidence supported the trial court's implied finding that " 'the circumstances [were] such that the continuance of the trustee in office would be detrimental to the

13

trust.' " (*Getty*, *supra*, Cal.App.3d at pp. 139-140.)  Thus, Valentine's removal as trustee was not an abuse of discretion.

Valentine contends that under the heightened standard for removal that applies to named trustees, the circumstances of this case did not warrant his removal.  We disagree. "[T]he court will not ordinarily remove a Trustee appointed by the creator of the trust." (*Estate of Bixby* (1961) 55 Cal.2d 819, 826.)  Thus, a "settlor's named trustee will be removed only for extreme grounds, such as incapacity, dishonesty, or lack of the qualifications necessary to administer the trust." (*Estate of Gilliland* (1977) 73 Cal.App.3d 515, 528.)

In this case, the evidence showed that Valentine continued to defy court orders, he failed to respond to reasonable requests for information, he failed to timely furnish financial information that he was obligated to provide, and he signaled an intent to continue wasting trust funds.  This was essentially a repetition of the conduct that nearly caused the trial court to remove him for mismanagement in the prior trustee removal proceeding.  It also led the the trial court to warn Valentine that "[a]ny future failure will certainly be evaluated in light of these transgressions."  In our view, these circumstances constitute "extreme grounds," which warranted Valentine's removal as trustee.  We find no error in his removal.

### 2. There Was No Violation of Mediation Confidentiality That Materially Affected Valentine's Substantial Rights

Valentine argues that the contents of the mediation were disclosed at the evidentiary hearing, in violation of the Evidence Code.  He points specifically to when he was asked to discuss whether:  (1) he left the first mediation early, (2) he knew that a settlement agreement had been reached between the parties, and (3) he left the second mediation early after his attorney went to a doctor's appointment.

Evidence Code "[s]ection 1119 governs the general admissibility of oral and written communications generated during the mediation process.  Subdivision (a)

14

provides in pertinent part that '[n]o evidence of anything said or any admission made *for the purpose of, in the course of, or pursuant to*, a mediation . . . is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any . . . civil action . . . .' (Italics added.)" (*Cassel v. Superior Court* (2011) 51 Cal.4th 113, 123.) "Subdivision (c) of [Evidence Code] section 1119 further provides that '[a]ll communications, negotiations, or settlement discussions *by and between* participants in the course of a mediation . . . shall remain confidential.' (Italics added.)" (*Id.* at pp. 123-124.) Thus, "absent an express statutory exception, all discussions conducted in preparation for a mediation, as well as all mediation-related communications that take place during the mediation itself, are protected from disclosure." (*Id.* at p. 128.)

Respondents contend that there was no error. Citing *Foxgate Homeowners' Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1 (*Foxgate*), respondents argue that "there was no violation of mediation confidentiality because counsel for the beneficiaries was entitled to report Valentine's obstructive conduct to the court." In *Foxgate*, our high court determined that "[t]o carry out the purpose of encouraging mediation by ensuring confidentiality, the statutory scheme . . . unqualifiedly bars disclosure of communications made during mediation absent an express statutory exception." (*Id.* at p. 15.) Thus, the court concluded that a declaration of counsel violated the Evidence Code, where that declaration disclosed mediation-related communications for the purpose of establishing bad-faith conduct at mediation. (*Id.* at p. 18.) However, the court noted that "[t]o the extent that the declaration of counsel stated that the mediator had ordered the parties to be present with their experts, there was no violation. As noted earlier, neither [Evidence Code] section 1119 nor [Evidence Code] section 1121 prohibits a party from revealing or reporting to the court about *noncommunicative conduct*, including violation of the orders of a mediator or the court during mediation." (*Id.* at p. 18, fn. 14, italics added.)

We need not determine whether or to what extent the complained-of questions violated mediation confidentiality because no error, assuming there was error, prejudiced

15

Valentine.[5]  "The remedy for violation of the confidentiality of mediation is that stated in [Evidence Code] section 1128:  'Any reference to a mediation during any subsequent trial is an irregularity in the proceedings of the trial for purposes of Section 657 of the Code of Civil Procedure.  Any reference to a mediation during any other subsequent noncriminal proceeding is grounds for vacating or modifying the decision in that proceeding, in whole or in part, and granting a new or further hearing on all or part of the issues, *if the reference materially affected the substantial rights of the party requesting relief.*' "  (*Foxgate*, *supra*, 26 Cal.4th at p. 18, italics added.)

Here, none of the complained-of questions materially affected Valentine's substantial rights.  In pronouncing its decision, the trial court made no reference to Valentine's statements or conduct at any mediation session.  Instead, in removing Valentine as trustee, the court specifically found that Valentine had violated statutory duties by providing statements to the beneficiaries on an untimely basis, by failing to meet court deadlines for providing trust account statements, and by not engaging in "regular reporting" of financial information the beneficiaries.  The court also found that there was "clearly animosity" between Valentine and the beneficiaries that warranted his removal.  Even assuming some or all of the complained-of questions violated mediation confidentiality, the violation did not materially affect Valentine's substantial rights in the trustee removal proceeding.

### C.  *Missing Record*

Valentine asserts that his due process rights were violated because he was forced to file his opening brief without a complete record on appeal.  Respondents concede that

_____

[5] Arguably, some of the complained-of questions did concern noncommunicative conduct.  For instance, one question was whether Valentine left the first mediation session early.  However, in asking Valentine *why* he left early, the beneficiaries' attorney asked Valentine if he "took the position that [he] did not have sufficient records" to proceed.  This is clearly a reference to something Valentine said at the mediation.  Thus, while there was a noncommunicative aspect to this revelation (i.e., he left early), there was also clearly a reference made to communications that occurred at the mediation.

16

the transcripts for two hearings held on June 29, 2012, and August 31, 2012, appear to be missing from the record on appeal.  However, respondents claim that Valentine has shown no prejudice from the omission.

We agree with respondents.  " 'To establish prejudice, a party must show "a reasonable probability that in the absence of the error, a result more favorable to [it] would have been reached." [Citation.]' [Citation.]" (*Trolan*, *supra*, 31 Cal.App.5th at p. 950.)  Valentine has not shown that the omission of the hearing transcripts prejudiced him.  Respondent notes that the transcript of the June 29, 2012 hearing appears in the clerk's transcript.  Respondent also notes that an order following the August 31, 2012 hearing is in the record, and that the order "merely stated that the parties stipulated to mediate certain issues, directed the parties to provide their adversaries with copies of specified documents, scheduled future proceedings, and ordered all trust assets to be placed in a blocked account."  Valentine does not challenge any of those rulings.  We reject Valentine's due process argument, as he fails to show any prejudice from the omission of the identified reporter's transcripts.[6]

### III.  DISPOSITION

The order is affirmed.  Respondents shall recover their costs on appeal.

---

[6] We also observe that Valentine designated a record on appeal in excess of 10,000 pages, spanning years of litigation.  In his brief, he provided no citations to the record in his 19-page statement of facts, and cited only to the transcript of the June 17, 2013 evidentiary hearing in the argument section of his brief.  Under these circumstances, we find no prejudice to Valentine due to the missing reporter's transcripts

17

_____
Greenwood, P.J.

WE CONCUR:


_____
Elia, J.




_____
Danner, J.




Selander et al. v. Valentine
No. H039828