Filed 3/2/22  Dolch v. MUFG Union Bank CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DEBRA DOLCH, as Conservator, etc.<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>MUFG UNION BANK, N.A., et al., as Trustees, etc.,<br><br>　　　Defendants and Respondents. | A162460<br><br>(San Mateo County<br>Super. Ct. No. 16-PRO-00299) |

Appellant Debra Dolch is the conservator of the estate of Thea Bacon,[1] who passed away in January 2021.[2] Dolch is also the trustee of the Thea Bacon Living Trust (Thea's Personal Trust). Thea was a lifetime beneficiary of a testamentary trust (Trust) established by Thea's husband, Frank Rogers Bacon, Jr. Dolch appeals from the denial of her petition to remove the cotrustees (Prob. Code,[3] § 15642) of the Trust, MUFG Union Bank, N.A. (Union Bank), and Mark Brodka (collectively, Trustees), for failure to fund

---

[1] We refer to members of the Bacon family by their first names for purposes of clarity.

[2] Prior to Thea's death, Dolch was also the conservator of Thea's person.

[3] All further undesignated statutory references are to the Probate Code.

1

litigation seeking to recover Thea's sizeable personal assets from accused elder abuser James Sykes. Dolch contends the trial court erred by ruling on her petition without an evidentiary hearing, finding she lacked standing to pursue the petition due to Thea's death and determining the Trustees had not abused their discretion in refusing to fund the ongoing litigation. We affirm for lack of standing. Accordingly, we do not reach the merits of Dolch's petition.

## BACKGROUND

### A.     *The Trust and Its Terms*

Frank died testate in 1984. In his will, Frank left his Hillsborough home, all of his personal property, and $500,000 in cash for his wife, Thea. Frank established the Trust under his will. The Trust was structured to take advantage of the marital tax deduction and estate tax exemptions (Marital Trust), with the residue of Frank's estate held in a separate trust (Residuary Trust). During her lifetime, Thea was the sole beneficiary of the Marital Trust and the Residuary Trust.

As to the administration of the Marital Trust, paragraph 2.B.i of the Trust provides: "All net income shall be paid to THEA B. BACON, the decedent's wife, at monthly or other convenient intervals, but at least annually." Paragraph 2.B.ii provides: "From time to time and at any time, the Trustee may pay to the decedent's wife so much of the principal of the Marital Trust as is necessary or advisable, in reasonable discretion, for her support, health and maintenance, in accordance with her customary standard of living."[4] Additionally, paragraph 2.B.iii provides: "Upon the death of

---

[4] Trust distributions made for a beneficiary's support, health, and maintenance are colloquially known as the HEMS standard. (See Kelson, *Get HEMS Straight: Tailor the Right Distribution Standard* (2015) 42 Estate Planning 3, pp. 2–3.)

2

decedent's wife, the undistributed net income of the Marital Trust . . . shall be paid to her estate and the balance of assets in the Marital Trust shall be added to and become part of the Residuary Trust . . . ."

As to the administration of the Residuary Trust, paragraph 3.A of the Trust provides: "During the lifetime of the decedent's wife, the Trustee shall pay to her all of the net income of the Residuary Trust. In addition, from time to time and at any time, the Trustee may pay to or apply for the benefit of the decedent's wife so much of the principal of the Residuary Trust as the Trustee, in reasonable discretion, deems necessary or advisable for her support, health and maintenance, in accordance with her customary standard of living." Pursuant to paragraph 3.B., "[u]pon the death of the decedent's wife, the Residuary Trust shall be divided into as many equal shares . . . as there are children of the decedent then living or then deceased with living issue."

Paragraph 4.B. specifies: "Except as expressly otherwise provided herein, whenever the right of any beneficiary to payments from net income hereunder shall terminate, either by reason of death or otherwise, all such payments accrued or undistributed by the Trustee on the date of such termination shall be distributed to the beneficiary entitled to the next successive interest hereunder."

## B.    *The Elder Abuse Actions*

In May 2018, Dolch, as conservator of Thea's person and estate, petitioned for an elder abuse restraining order against James Sykes, which the court granted on November 15, 2018. On August 30, 2018, Dolch, again as conservator of Thea's person and estate and as trustee of the Personal Trust, filed an action against Sykes, alleging he had committed elder abuse and misappropriated cash, as well as Thea's Hillsborough home by, inter alia,

3

unduly influencing Thea to sign a purported gift deed and corrected gift deed with a retained life estate. (We refer hereafter to the restraining order action and the elder abuse litigation, collectively, as the "elder abuse actions.")

## C.    *Dolch's Requests for Trust Distribution*

On May 28, 2020, Dolch sent a demand letter to the Trustees, seeking a principal distribution from the Trust in the amount of $4,036,585.50. This amount consisted of (1) attorney fees and costs of $1,483,000 incurred to that point in the elder abuse actions, (2) previously incurred care costs from May 7, 2018, through March 1, 2020, of $1,180,916.50, (3) care costs for the rest of 2020, in the amount of $1,257,180, and (4) Dolch's conservatorship fees for the past 16 months, of $115,762.

The Trustees made an initial distribution of $500,000 to Dolch. Then after receiving supporting documentation from Dolch, the Trustees paid Dolch $1,180,916 for care costs. The Trustees also paid all of Dolch's fees as conservator for Thea, which had increased to $146,565, as well as $229,716.99, reflecting a reduced amount in care costs due to direct payments to Thea's care providers from January 1, 2020, through June 30, 2020, and, pursuant to court order, $86,056.58 of the requested $1,483,000 in legal fees for Thea's court-appointed counsel. Beginning in March 2020, the Trustees paid $55,000 per month directly to Thea's caregivers and $22,000 per month directly to Thea's transportation provider. The Trustees also paid Dolch $27,765 per month for Thea's remaining care and living expenses.

On July 17, 2020, Dolch sent another demand letter to the Trustees, seeking reimbursement of $1,483,000 for Thea's attorney fees already incurred in the elder abuse actions and distribution of $500,000 from the Trust to fund that same litigation.

4

### D.  Trustees' Petition for Instructions

On September 9, 2020, the Trustees filed a petition for instructions regarding Dolch's demand for reimbursement of attorney fees and costs from the Trust principal. Dolch opposed the petition and increased her total attorney fees request to $2.8 million for both elder abuse actions. At the hearing on the petition for instructions, the court indicated that the petition was premature as to the elder abuse litigation, and as such, the court declined to make any attorney fee determination. The trial court did, however, issue an order instructing the Trustees to reimburse Dolch $91,830.52 for attorney fees incurred in securing the restraining order against Sykes. Dolch did not challenge the order.

### E.  Petition to Remove Trustees

On December 11, 2020, Dolch filed a petition to remove Union Bank and Brodka as Trustees of the Trust, asserting four grounds: (1) the Trustees' refusal to authorize the payment of attorney fees incurred in the elder abuse actions was inconsistent with their Trust obligation to provide for Thea's health, education, maintenance, and support; (2) the Trustees had favored the remainder beneficiaries over Thea by not paying these attorney fees; (3) the Trustees had favored themselves by bringing their petition for instructions concerning attorney fees; and (4) Union Bank and Brodka had treated a former, third trustee, Russ Marshall, with hostility, causing his resignation and leaving the trust administration "in disarray."

Thea passed away on January 10, 2021. On January 29, 2021, the Trustees filed a verified objection to the removal petition, arguing the trial court should dismiss the petition because, due to Thea's death, it was moot, and Dolch lacked standing to bring it. The Trustees also argued that they made their decision to deny reimbursement under the law and facts because,

5

among other things, the attorney fees did not fall within the HEMS standard as the Trustees were already covering all of Thea's care, medical, and living expenses. Additionally, the Trustees asserted that (1) they had properly fulfilled their fiduciary duties in exercising their discretion under the terms of the Trust; (2) they had not favored the remainder (and now current) Trust beneficiaries over Thea or (3) placed their own interests ahead of Thea's interests; and (4) there was no hostility among the three trustees, and certainly none affecting the administration of the Trust after cotrustee Marshall's resignation.

On March 2, 2021, the trial court denied Dolch's petition to remove the Trustees, finding the Trustees had lawfully exercised their duties under the Trust. The trial court concluded: "There is no lawful basis articulated in the moving papers to remove the [Trustees] at this time. Additionally, the death of Thea Bacon renders the Petition effectively moot, and the petitioner lacks standing as a result of that death to seek to remove the [Trustees] at this time."

## DISCUSSION

### I. Standard of Review

" 'The probate court has general power and duty to supervise the administration of trusts.' " (*Christie v. Kimball* (2012) 202 Cal.App.4th 1407, 1413.) Although the probate court has " 'wide, express powers to "make any orders and take any other action necessary or proper to dispose of the matters presented" by [a] section 17200 petition.' [Citations.] The probate court . . . must exercise those powers 'within the procedural framework laid out in the governing statutes' of the Probate Code." (*Babbitt v. Superior Court* (2016) 246 Cal.App.4th 1135, 1144.) Whether a party has standing under the Probate Code is a threshold issue we review de novo. (*San Luis Rey Racing,*

6

*Inc. v. California Horse Racing Bd.* (2017) 15 Cal.App.5th 67, 73 ["Both standing and the interpretation of statutes are questions of law to which we typically apply a de novo standard of review."]; *Neil S. v. Mary L.* (2011) 199 Cal.App.4th 240, 249 ["standing is a question of law, particularly where, as here, it depends on statutory provisions conferring standing"].)

## II. Standing

The trial court denied Dolch's petition to remove the Trustees on the merits and for lack of standing. The Trustees contend that Dolch lacks standing to petition for their removal because Thea's death mooted the removal request. Dolch responds that she has standing for three reasons. First, as conservator of Thea's estate and as trustee of Thea's Personal Trust, Dolch asserts her standing is conferred by statute. Second, Dolch contends California case law "broadly" defines standing in probate cases. Third, Dolch argues, without citing any applicable law,[5] her "duty to protect Thea's right to bequest her estate supports Dolch's standing." (Original capitalization and boldface omitted.)

"A litigant's standing to sue is a threshold issue to be resolved before the matter can be reached on the merits. (*Hernandez v. Atlantic Finance Co.* (1980) 105 Cal.App.3d 65, 71.) 'If we were to conclude that plaintiff did not have standing to maintain the action, not having been personally damaged by the defendants' conduct, then there would be no need to address the merits of her cause. Equally wasteful of judicial resources would be a resolution on the merits without reaching the standing issue.' (*Ibid.*) We will not address the merits of litigation when the plaintiff lacks standing, because ' " California courts have no power . . . to render advisory opinions or give declaratory relief." ' (*Municipal Court v. Superior Court (Gonzalez)* (1993) 5 Cal.4th 1126,

---

[5] An absence that was acknowledged at oral argument.

1132.) Standing ' "goes to the existence of a cause of action." [Citation.]' (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 862, p. 320.)" (*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1000.)

The Probate Code specifies those who have standing to petition for the removal of a trustee. "A trustee may be removed in accordance with the trust instrument, by the court on its own motion, or on petition of a settlor, cotrustee, or beneficiary under Section 17200." (§ 15642, subd. (a).) Dolch is not the Trust's settlor; Frank was. Although Dolch is the trustee of Thea's Personal Trust, she is not the trustee of the Trust established under Frank's will; Union Bank and Brodka are the Trustees. Thus, Dolch must either be or be representing a beneficiary of the Trust to have standing to pursue the petition to remove the Trustees.

Pursuant to section 24, " 'Beneficiary' means a person to whom a donative transfer of property is made or that person's *successor in interest,* and: [¶] . . . [¶] (c) As it relates to a trust, means a person who has *any present or future interest, vested or contingent.*" (Italics added.) The general rules of survivability apply to proceedings under the Probate Code.[6] (*Dunlap v. Mayer* (2021) 63 Cal.App.5th 419, 425 (*Dunlap*).) Dolch, as conservator of Thea's estate and as trustee of Thea's Personal Trust, is a successor in interest to Thea's interest in the Trust. (See § 2467, subd. (a) [conservator "continues to have duty of custody and conservation of the estate after the

_____

[6] Section 1000, subdivision (a) states: "Except to the extent that [the Probate Code] provides applicable rules, the rules of practice applicable to civil actions . . . apply to, and constitute the rules of practice in, proceedings under this code." Code of Civil Procedure section 377.30 provides as relevant: "A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest, . . . and an action may be commenced by the decedent's personal representative or, if none, by the decedent' s successor in interest."

8

death of the . . . conservatee"]; § 16249 [trustee "has the power to prosecute or defend actions . . . for the protection of trust property"].)

But, in order to be a beneficiary, a person must have an "interest," and for Dolch to be a successor in interest, that interest must continue to exist.

Thea's interest in the Trust was that of a lifetime beneficiary, who was entitled to regular income payments, as well as discretionary distributions "for her support, health and maintenance, in accordance with her customary standard of living." (See Trust, at §§ 2.B.i-ii, 3.A.) This lifetime beneficiary interest in income and support was necessarily terminated on Thea's death. (See *Salvation Army v. Price* (1995) 36 Cal.App.4th 1619, 1624 [death of beneficiary terminated trust designed to provide income to beneficiary during his lifetime]; *Estate of Baird* (1955) 135 Cal.App.2d 333, 341–342 [interest of life beneficiary extinguished upon her death]; see also *Ball v. Mann* (1948) 88 Cal.App.2d. 695, 699 [trust established for minor should be terminated upon minor reaching majority].] As a matter of common sense, a beneficiary who has already died has no right to continuing maintenance. (See, e.g. Scott & Ascher on Trusts (5th ed. 2006) § 12.1.3, p. 701 ["A person who has already died cannot be a trust beneficiary."].)

While standing may be broadly interpreted in California, Dolch's standing to remove the Trustees cannot be broader than Thea's, which was unquestionably terminated by her death. The cases cited by Dolch are distinguishable, as none involve a deceased beneficiary's estate seeking to remove a trustee. (See *Barefoot v. Jennings* (2020) 8 Cal.5th 822, 825 [disinherited individuals have standing to challenge trust amendments eliminating their beneficiary status]; *Dunlap, supra,* 63 Cal.App.5th at p. 425 [beneficiary's estate had standing to petition for accounting]; *Elliott v.*

9

*Superior Court* (1968) 265 Cal.App.2d 825, 834–836 [beneficiary's estate had standing to enforce rights that vested during beneficiary's lifetime].)

"The purpose of removing a trustee is not to inflict a penalty for past action, but to preserve the trust assets. [Citation.] 'The question in each case is whether the circumstances are such that the continuance of the trustee in office would be detrimental to the trust.' " (*Getty v. Getty* (1988) 205 Cal.App.3d 134, 139–140.) As explained, with Thea's passing, her estate has no continuing right to maintenance and support under the defined terms of the Trust. Thus, Dolch no longer has standing to remove the Trustees.[7]

Finally, contrary to Dolch's contention, Thea's right to bequest her estate to the charitable organizations of her choice does not support Dolch's standing to remove the Trustees. Again we look to the purpose of the Trust, which was to provide income to Thea during her lifetime, as well as to support her lifestyle. Even assuming that giving to charitable organizations was an important aspect of Thea's lifestyle, nothing in the Trust purports to extend maintenance payments to Thea's estate.

In sum, although Dolch had been able to stand in Thea's shoes to preserve her interests under the Trust, the specific terms of this lifetime estate mean that with Thea's passing, she no longer does. Accordingly, we conclude the trial court properly denied Dolch's petition to remove the Trustees for lack of standing.[8]

---

[7] We express no opinion regarding the ability of Dolch, Thea's estate, or Thea's Personal Trust to seek reimbursement for maintenance payments that may have accrued during Thea's lifetime, potentially including attorney fees incurred to preserve Thea's assets consistent with the terms of the Trust.

[8] By reason of this holding, we do not reach the merits of the petition. We similarly deny the Trustees' request for judicial notice.

### III. Failure to Hold an Evidentiary Hearing

Normally, a lack of standing would end our discussion. Nevertheless, we briefly address Dolch's claim that the trial court erred by failing to hold an evidentiary hearing when it denied her removal petition.

A probate court must grant a request for an evidentiary hearing on contested factual matters. (*Estate of Lensch* (2009) 177 Cal.App.4th 667, 676 (*Lensch*); *Estate of Bennett* (2008) 163 Cal.App.4th 1303, 1308–1310.) But no request was made here, and no contested factual matters were presented.

We conclude Dolch forfeited the right to an evidentiary hearing on the petition seeking removal of the Trustees. (See *Evangelho v. Presoto* (1998) 67 Cal.App.4th 615, 620 [" 'where the parties do not object to the use of affidavits in evidence, and where both parties adopt that means of supporting their positions, the parties cannot question the propriety of the procedure on appeal' "].) *Lensch, supra,* 177 Cal.App.4th 667 and *Dunlap, supra,* 63 Cal.App.5th 419, cited by Dolch, do not compel a contrary conclusion. In *Lensch,* unlike here, the appealing party had asked for an evidentiary hearing, but the trial court denied the request. (*Lensch,* at pp. 672–673.) And in *Dunlap,* the court, on its own motion, dismissed the petition at a case management conference, despite outstanding discovery and without giving the petitioner notice that the conference could result in dismissal. (*Dunlap,* at pp. 425–426.) Here, the trial court held a hearing and considered the written and verbal arguments of counsel before it rendered its decision denying the petition.

### DISPOSITION

The judgment is affirmed.

_____

Desautels, J.*

WE CONCUR:


_____

Pollak, P.J.


_____

Streeter, J.

*A162460  Dolch v. MFUG Union Bank, N.A. et al.*

---

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.